[No. S032852. May 26, 1994.]

In re Marriage of FARID and SHIRIN ASSEMI.
FARID ASSEMI, Respondent, v.
SHIRIN ASSEMI, Appellant.

898

## COUNSEL

Shirin Assemi, in pro. per, Fletcher & Fogderude and Norman L. Fletcher for Appellant.

Stephen A. Kalemkarian, David C. Kalemkarian and Bernard N. Wolf for Respondent.

## OPINION

**GEORGE, J.**—Code of Civil Procedure section 664.6[1] provides that "[i]f parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally on the record before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."[2] The issue for our determination is whether, under the circumstances of this marital dissolution proceeding, the oral stipulation for settlement was made "before the court" within the meaning of section 664.6.

As we shall explain, the record in this case establishes that an oral stipulation was made before a person who, pursuant to the stipulation of the parties to pending litigation, was empowered to adjudicate and render a determination of the issues in controversy submitted to him, and that the stipulation was presented to him in the context of his role as a final arbiter who was presiding over the proceeding in which such determination would be made. Under these circumstances, we conclude that the oral stipulation was made "before the court" and therefore was enforceable under section 664.6.

Accordingly, we conclude the trial court properly entered judgment pursuant to section 664.6, enforcing the oral stipulation for settlement between

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] Prior to its 1993 amendment, section 664.6 provided: "If parties to pending litigation stipulate, in writing or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement." The 1993 amendment to the statute (Stats. 1993, ch. 768, § 1) added, among other provisions, the requirement that a stipulation made orally before the court be placed "on the record." Although, in the present case, the statute in effect prior to the 1993 amendment governed the section 664.6 motion to enforce the oral stipulation at issue, as we shall explain, we would reach the same conclusion that we reach in the present case regarding the enforceability of the oral stipulation if it were governed by the statute in its current form.

Farid Assemi (husband) and Shirin Assemi (wife). For this reason, the judgment of the Court of Appeal, overturning the trial court judgment on the ground the stipulation was not made "before the court" within the meaning of section 664.6, must be reversed.

I

On June 2, 1989, husband filed this proceeding seeking dissolution of his nine-year marriage to wife in the Fresno County Superior Court. Following wife's filing of a response, the matter was designated "at issue" and scheduled for a settlement conference. At the settlement conference, the parties appeared in person, with their respective counsel, before Judge Harry Papadakis of the Fresno County Superior Court.

Following settlement discussions and pursuant to the parties' oral stipulation, made before Judge Papadakis, the court (1) bifurcated the issue of the termination of the parties' marital status from all other issues, and entered a judgment of dissolution of the marriage, and (2) ordered trial of the remaining issues in controversy, involving primarily the identification and division of community property and the questions of spousal and child support, "referred to binding arbitration," with one of three designated retired judges to be appointed as arbitrator. The stipulation and order was reduced to writing (hereafter stipulation and order), and was signed by the parties, their counsel, and the settlement conference judge.[3] In brief, the stipulation and order provided for the appointment of a retired judge to act as an arbitrator,

---

[3]The stipulation and order provided in pertinent part: "APPOINTMENT OF RETIRED JUDGE TO BE TRIAL JUDGE:

"[This] matter shall be, and hereby is, ordered to be set for binding arbitration, under the following conditions:

"a. That one of the following retired judges shall be appointed as Arbitrator in the above-entitled matter: The Hon. Charles F. Hamlin, The Hon. Blaine Pettitt, or, The Hon. Leonard M[e]yers.

"b. That the Arbitration hearing of this matter, before said retired judge, shall be set for a date mutually agreeable between counsel, the parties, and the judge to be selected, and shall be set between September 24, 1990, and October 5, 1990. That NORMAN L. FLETCHER, counsel for respondent, shall select which of said three judges shall preside over the Arbitration hearing, and he shall make arrangements therefor, and advise counsel for petitioner of said arrangements, forthwith.

"c. That there shall be a Court reporter present at all of the proceedings to be held in said Arbitration of this matter, with a full and complete record of the proceedings to be made. That all of the California Rules of Evidence and Rules of Court applicable to Trials conducted in the Superior Court shall apply to the Arbitration of this matter.

"d. That the parties right to appeal the decision of the Arbitrator on said hearing shall be reserved to both parties, with all of the Rules for appeals from the Superior Court to be applicable to said Arbitrator's decision.

"e. That each party shall, and hereby does, have, the right to take one (1) personal deposition of the other party prior to said Arbitration. That both depositions shall be set at a

with the "arbitration" proceedings to be transcribed by a reporter and governed by the rules of evidence and court procedures applicable to superior court trials, and the decision of the arbitrator to be appealable by either party as would be any other final judgment of the superior court.

The arbitration proceedings were scheduled for October 1, 1990, with retired Judge Leonard Meyers of the Fresno County Superior Court acting as the appointed arbitrator agreed upon by the parties. On that date, at Judge Meyers's law offices, shortly before the proceedings were to commence, the parties, with their respective counsel and accountants present, resumed settlement negotiations. Judge Meyers agreed to delay commencement of the formal proceedings in order to allow the parties a final opportunity to reach an accord with respect to the remaining issues in controversy.

That same day, in the latter part of the afternoon, the parties and counsel advised Judge Meyers that the settlement negotiations had been successful, and sought to state on the record the terms of the settlement, to be transcribed by the certified reporter. At the outset of the transcribed proceedings, Judge Meyers stated that he was "informed that the parties have arrived at a stipulation to dispose of all of the issues that were to be arbitrated." After the parties' respective attorneys recited the terms of the settlement, Judge Meyers inquired of counsel whether they "agree[d]" with the stipulation, and counsel for both parties replied affirmatively. When Judge Meyers then inquired of the parties individually whether they understood and agreed to the terms as recited on the record, both husband and wife replied affirmatively. Following further discussion relating to consummation of the settlement, Judge Meyers stated: "Very well. And as the arbitrator, I accept the stipulation, I'm satisfied the parties understand it, accept the stipulation."

Four months thereafter, on February 5, 1991, husband's counsel filed a motion for entry of judgment, pursuant to section 664.6, to enforce the parties' "oral stipulation," also requesting an award of attorney fees and costs as sanctions pursuant to Civil Code former section 4370.6. In support of the motion, husband filed his own declaration and declarations of his counsel (Stephen Kalemkarian and Kalemkarian's associate), as well as a transcript of the October 1, 1990, proceedings setting forth the terms of the settlement agreement to which the parties had stipulated.

---

date and time mutually convenient to the parties and their respective counsel, as soon as reasonably possible."

The stipulation and order concluded with the signing of the document by Judge Papadakis, as follows:

"Done in open court on June 13, 1990, and signed this 11 day of July, 1990.

_____[signature]_____

JUDGE OF THE SUPERIOR COURT"

In his declaration, Kalemkarian related the following events that had led to the motion for enforcement of the stipulated settlement. On October 5, 1990, Kalemkarian delivered to the law offices of wife's counsel, Norman Fletcher, a proposed draft of a written settlement agreement incorporating the terms to which the parties previously had stipulated orally. On November 1, 1990, Kalemkarian received a letter from Fletcher regarding the proposed draft, stating that "[t]he stipulation and order are acceptable with the following exceptions. . . ," and listing 14 exceptions, consisting of corrections of typographical errors, clarification of words or phrases, and proposed terms outside the scope of the oral stipulation, relating to child visitation and the purchase of life insurance.

On November 12, 1990, Kalemkarian delivered a letter of that same date to Fletcher's law offices, together with a revised written settlement agreement incorporating certain of the modifications proposed by Fletcher which, according to Kalemkarian's letter, were consistent with the parties' agreement as reflected in the transcript of the October 1, 1990, proceedings.

By letter dated December 7, 1990, Fletcher notified Kalemkarian that wife was unwilling to sign the settlement agreement because of her belief that husband had understated by approximately $60,000 the balances of his various bank accounts as of the date of the parties' separation. Fletcher requested that husband furnish copies of the bank account statements for the period in question.

In response, Kalemkarian's associate telephoned Fletcher, requesting the number and location of the bank accounts in question, and other information that would enable Kalemkarian to identify those accounts. Fletcher refused to provide that information, insisting instead that (according to his client) husband was fully aware of the accounts, the balances of which allegedly had been understated. Fletcher further represented that he had no objections to the revised written settlement agreement, and that the alleged understatement of bank account balances was the only issue preventing his client from executing the document.

Ultimately, Fletcher advised Kalemkarian that his client was unwilling to execute the agreement because of her firm belief that petitioner had concealed money from her.

In support of his request for sanctions against respondent and her counsel pursuant to Civil Code former section 4370.6, husband presented billings for attorney fees and costs incurred in attempts to enforce the stipulation.

When husband moved for entry of judgment, wife asserted in opposition, among other things, that the oral stipulation was not enforceable under

section 664.6 because it had not been presented "before the court" in a judicially supervised proceeding. Wife also submitted her declaration stating that the oral stipulation should not be enforced because it was "grossly unfair" to her.

Following a hearing, the trial court granted husband's motion and ordered entry of judgment pursuant to the terms of the parties' oral stipulation. In so ruling, the trial court observed that "[i]t appears clear to this court that the proceeding which took place on October 1st, 1990, was a judicially supervised proceeding." The trial court also awarded sanctions in the amount of $5,000 to be paid by wife to husband.

On wife's appeal, the Court of Appeal reversed. The appellate court concluded the oral stipulation for settlement approved by Judge Meyers had not been made "before the court" in the context of section 664.6, because Judge Meyers had not been acting as a judge (i.e., an officer appointed to preside and to administer the law in a court of justice), but solely as an "arbitrator" who was supervising settlement negotiations in the course of an arbitration proceeding.[4] Holding the oral stipulation was not enforceable under section 664.6, the Court of Appeal set aside the judgment entered by the trial court pursuant to the oral stipulation, and the award of sanctions.

## II

Prior to the enactment of section 664.6 (Stats. 1981, ch. 904, 2, p. 3437), California appellate decisions were in conflict as to the appropriate procedure for enforcement of an agreement to settle pending litigation. One line of authority suggested or held the proper procedures for enforcement of settlement agreements were limited to a motion under section 437c for summary judgment (which was to be denied if there was a disputed issue of material fact; see, e.g., *Duran* v. *Duran* (1983) 150 Cal.App.3d 176 [197 Cal.Rptr. 497]); a separate suit in equity to enforce the agreement; or (if the defendant was attempting to enforce settlement) an amendment to the pleadings, asserting the settlement as an affirmative defense. (See *Corkland* v. *Boscoe* (1984) 156 Cal.App.3d 989, 993 [203 Cal.Rptr. 356].)

Another line of authority, however, recognized the inherent power of a court to enforce, by way of a nonstatutory motion for entry of judgment enforcing the settlement agreement, a settlement agreement presented by the

---

[4]In concluding Judge Meyers was appointed to act solely as an arbitrator to conduct arbitration proceedings, and that arbitration had only a minimal relationship to the judicial court system, the Court of Appeal found it unnecessary to determine whether the stipulation and order provided for private arbitration under sections 1280-1288.8, or for "judicial arbitration" under sections 1141.10-1141.31.

parties in the course of, or as a result of, judicially supervised settlement proceedings. (See, e.g., *Gopal* v. *Yoshikawa* (1983) 147 Cal.App.3d 128, 132-133 [195 Cal.Rptr. 36]; see also *Corkland* v. *Boscoe, supra,* 156 Cal.App.3d at p. 993-994.) In *Gopal,* the court reasoned: "[W]hen the fact of settlement and the terms thereof are not subject to reasonable dispute, to require a party to bring a separate suit in equity to enforce the agreement, or raise it by way of affirmative defense during a trial, would defeat the very purpose the settlement conference is designed to achieve avoiding the time and expense of trial. . . . When parties to litigation appear before the court and advise it that the controversy has been settled and the terms thereof, courts must have the ability to enforce those agreements. This is necessary not only to control the proceedings before the court, but also to protect the interests of parties who may have materially altered their positions in reliance on the settlement." (147 Cal.App.3d at p. 132.)

With the enactment of section 664.6, the Legislature not only endorsed the nonstatutory motion procedure approved in the *Gopal* decision, but expanded it beyond the context of judicially supervised settlement conferences. Under the statute, as amended in 1993,[5] the trial court may enter judgment pursuant to a stipulated settlement if the stipulation is made in one of two ways: either in a writing signed by the parties outside the presence of the court, or orally on the record before the court. These requirements minimize the possibility of conflicting interpretations of the stipulation or its effect. (See *City of Fresno* v. *Maroot* (1987) 189 Cal.App.3d 755, 761-762 [234 Cal.Rptr. 353]; *Datatronic Systems Corp.* v. *Speron, Inc.* (1986) 176 Cal.App.3d 1168, 1174 [222 Cal.Rptr. 658].) A section 664.6 motion is appropriate, however, even when issues relating to the binding nature or terms of the settlement are in dispute, because, in ruling upon the motion, the trial court is empowered to resolve these disputed issues and ultimately determine whether the parties reached a binding mutual accord as to the material terms. (See *Estate of Dipinto* (1986) 188 Cal.App.3d 625, 629 [231 Cal.Rptr. 612]; *Casa de Valley View Owner's Assn.* v. *Stevenson* (1985) 167 Cal.App.3d 1182, 1189 [213 Cal.Rptr. 790].)

[5]The 1993 amendment to section 664.6 was part of Senate Bill No. 252, which related primarily to "judicial" and private arbitration, including the grounds for disqualification of an arbitrator, and discovery in arbitration proceedings, in addition to enforcement of settlement agreements under section 664.6. (See Legis. Counsel's Dig., Sen. Bill No. 252, Stats. 1993, ch. 768.) With respect to the amendment of section 664.6, the Legislative Counsel's Digest explains: "(1) Existing law authorizes the court, upon motion, to enter a judgment in a civil action according to the stipulation of the parties, in writing or orally before the court. [¶] This bill would revise that provision to refer to a writing signed by the parties outside the presence of the court or orally on the record before the court, for settlement of the case, and would authorize entry of a stipulated judgment, upon motion, based upon the terms of the settlement. The bill would also authorize the court to retain jurisdiction over the parties, at their request, as specified."

The requirement that the parties stipulate orally to a settlement agreement "before the court" has been held to refer to a stipulation presented in a *"judicially supervised"* proceeding (*City of Fresno* v. *Maroot, supra,* 189 Cal.App.3d 755, 762, italics added; *Richardson* v. *Richardson* (1986) 180 Cal.App.3d 91, 97 [225 Cal.Rptr. 370], italics added; *Datatronic Systems Corp.* v. *Speron, Inc., supra,* 176 Cal.App.3d 1168, 1173, italics added; see Cal. Civil Prac.—Proc. (Bancroft-Whitney 1992), vol. 3, ch. 20, Judgment Pursuant to Stipulation, § 20:11, p. 12), a setting that helps ensure the parties' understanding of the specific terms of the settlement, and their full appreciation of the finality and binding nature of the stipulation.

■ It is undisputed that a stipulated settlement presented orally by the party litigants or their counsel to a judge, in the course of a settlement conference supervised by that judge, satisfies the "before the court" requirement of section 664.6. (See, e.g., *Casa de Valley View Owner's Assn.* v. *Stevenson, supra,* 167 Cal.App.3d 1182 [during a voluntary settlement conference supervised by a judge, the party litigants orally stipulated on the record to a settlement]; *Richardson* v. *Richardson, supra,* 180 Cal.App.3d 91 [during a mandatory settlement conference conducted in judge's chambers, proposed settlement presented to trial court].)

In contrast, an oral stipulation to settle made by the party litigants at a deposition, but not in the presence of a judge or any other person serving in an officially recognized judicial capacity, does not satisfy the "before the court" requirement, even if the stipulation is placed on the record before a certified reporter. (See *City of Fresno* v. *Maroot, supra,* 189 Cal.App.3d at pp. 761-762; *Datatronic Systems Corp.* v. *Speron, Inc., supra,* 176 Cal.App.3d at pp. 1174-1175.)

### III

■ As we shall explain, we conclude that under the circumstances of the present case, the oral stipulation presented by the parties to Judge Meyers on the record[6] and approved by him on October 1, 1990, was made "before the court" under section 664.6.

At the outset, it is necessary to determine the capacity in which Judge Meyers was acting pursuant to the original stipulation and order. In proceedings under the former Family Law Act (Civ. Code, former § 4000 et seq.),

---

[6]Because in the present proceeding the oral stipulation was placed on the record and transcribed by a certified reporter, the 1993 amendment, adding the requirement that a stipulation presented orally be placed "on the record," does not affect the enforceability of the oral stipulation at issue under the statute in its current form.

and the current statutory scheme (Fam. Code, § 2000 et seq.), as an expeditious means of resolving disputed issues, trial courts frequently appoint a subordinate court officer to whom is delegated, pursuant to the stipulation of the parties, the authority to render binding factual findings or judicial determinations. (See *In re Marriage of Olson* (1993) 14 Cal.App.4th 1, 8, fn. 5 [17 Cal.Rptr.2d 480] ["The best and least expensive method of resolving disputes such as (the family law dispute in Olson), is for the parties to stipulate not only to the appointment of a special master, but also that the special master be empowered to determine the issues . . . ."].) Depending upon the stipulation of the parties, such an officer may serve in the capacity of a temporary judge pursuant to article VI, section 21, of the California Constitution; an arbitrator under the private contractual arbitration provisions of sections 1280-1288.8;[7] or a referee pursuant to section 638. (See *In re Marriage of Olson, supra,* 14 Cal.App.4th at p. 8, fn. 5; 2 Witkin, Cal. Procedure (3d ed. 1985) Courts, § 278, at p. 300.)

In the present proceeding, the stipulation and order is ambiguous as to the role to be served by Judge Meyers—specifically as to whether the parties intended that he act as a privately compensated temporary judge or as an arbitrator. The stipulation and order refers to the appointment of a retired judge to be the "trial judge," but that document also provides for the matter to be set for "binding arbitration" with the retired judge to act as the "arbitrator."

The position of temporary judge is authorized expressly by article VI, section 21, of the California Constitution, which provides: "On stipulation of the parties litigant the court may order a cause to be tried by a temporary judge who is a member of the State Bar, sworn and empowered to act until final determination of the cause." (See 1 Cal. Civil Procedure Before Trial (Cont.Ed.Bar 1993) § 5.46 ["The California Constitution provides civil litigants the opportunity to resolve their disputes in a private trial presided over by a temporary judge."].) One legal commentator explains: "California has created a full-fledged system of private judges, colloquially 'rent-a-judge,' which permits the parties to agree to a temporary judge . . . . Such an agreement allows the parties to bypass urban courts' crowded calendars, obtain a trial on a certain, prearranged date convenient to parties and witnesses, and avoid the cost of trailing on a master calendar while waiting

---

[7]We refer to private contractual arbitration as distinguished from "judicial arbitration" under sections 1141.10-1141.30. In defining judicial arbitration, one court explained: " 'Judicial Arbitration' is obviously an inapt term, for the system it describes is neither judicial nor arbitration. The hearing is not conducted by a judge, and the right to a trial de novo removes the finality of true arbitration. 'Extrajudicial mediation' would be closer to correct." (*Dodd* v. *Ford* (1984) 153 Cal.App.3d 426, 432, fn. 7 [200 Cal.Rptr. 256]; see also *Blanton* v. *Womancare, Inc.* (1985) 38 Cal.3d 396 [212 Cal.Rptr. 151, 696 P.2d 645, 48 A.L.R.4th 109].)

for a courtroom." (Christian, Private Judging, The Alternative Dispute Resolution Practice Guide (1993) § 40.3, p. 3.)

To invoke the constitutional authority empowering a temporary judge to act in this capacity, the parties must submit, for approval of the presiding or supervising judge of the court, a written stipulation designating the proposed temporary judge, and the temporary judge (unless a court commissioner) must take and file an oath of office. (Cal. Rules of Court, rule 244.) ▆ Once a temporary judge has taken an oath of office, he or she has the same authority as a regular judge (see generally, *Estate of Kent* (1936) 6 Cal.2d 154 [57 P.2d 901]), basically is bound by the same rules of evidence and procedures as those applicable in superior court trials, and is empowered to render an appealable judgment in the same manner as a regular judge. (See 2 Witkin, Cal. Procedure, *op. cit. supra*, Courts, § 284 at p. 307; Christensen, *Private Justice: California General Reference Procedure*, 1982 Am. B. Found. Res. J. 79, 89.)

The role of an arbitrator acting pursuant to a private written agreement to arbitrate, in proceedings governed by the private arbitration statutory scheme (§ 1280 et seq.), differs from that of a temporary judge in several respects. The arbitrator need not be sworn or take an oath of office in order to serve in that capacity. The arbitration proceedings are *not* governed by the rules of evidence or judicial procedures applicable to superior court trials, unless the arbitration agreement provides otherwise. (§ 1282.2, subd. (d).) The arbitrator issues an award, rather than a final appealable judgment, and a party to the proceedings must petition the court to confirm, correct, or vacate that award (§ 1285), with limited grounds for correction (§ 1286.6) or vacation (§ 1286.2) being available; additionally, the arbitrator's decision generally is not reviewable for errors of fact or law (see *Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1, 6, 11 [10 Cal.Rptr.2d 183, 832 P.2d 899]).

▆ In the present proceedings, the role served by Judge Meyers pursuant to the stipulation and order corresponded more closely to the functions and characteristics of a temporary judge than to those of an arbitrator. The stipulation and order contemplated that the proceedings would be governed by the rules and procedures applicable in superior court trials, and that Judge Meyers would render a decision having the same finality and subject to the usual appellate review accorded a judgment rendered by a superior court.

The record fails to reflect, however, that Judge Meyers took an oath of office empowering him to act as a temporary judge, and this circumstance precludes his having served in that capacity. Indeed, the parties do not contend he was acting as a temporary judge.

Instead, as reflected by the stipulation and order, the parties contemplated that Judge Meyers would serve in some hybrid capacity not clearly consistent with either the position of a temporary judge authorized by the California Constitution or that of an arbitrator under the private arbitration statutes.

In determining whether the oral stipulation was presented "before the court" within the meaning of section 664.6, however, we need not attempt to label or define precisely the position occupied by Judge Meyers. We conclude that, in view of the role to be served by Judge Meyers under the stipulation and order, as well as the circumstances under which the stipulated settlement was presented to him, the "before the court" requirement was met in the present case. Judge Meyers was empowered to exercise the adjudicatory functions of an arbitrator (if not a temporary judge) with the authority to render a binding determination of the controverted issues submitted to him by the parties, whether that determination was in the nature of a final judgment, subject to ordinary appellate review, or an arbitrator's award subject to the procedures of the private arbitration statutory scheme. As such, his role was closely analogous to that of a judge, in a judicial proceeding, empowered to exercise what are essentially judicial functions. "Arbitrators are judges chosen by the parties to decide the matters submitted to them, finally . . . ." (*Burchell* v. *Marsh* (1855) 58 U.S. (17 How.) 344, 349 [15 L.Ed. 96, 99].) Arbitrators have been extended the protection of judicial immunity, because they perform " 'the function of resolving disputes between parties, or of authoritatively adjudicating private rights.' " (*Antoine* v. *Byers & Anderson, Inc.* (1993) 508 U.S. __ [124 L.Ed.2d 391, 398, fn. 8, 113 S.Ct. 2167, 2170]; see also § 1280.1 [an arbitrator has the immunity, from civil liability, of a judicial officer].)

For these reasons, we conclude Judge Meyers was empowered to act in a quasi-judicial capacity as arbiter of the controverted issues, and was acting in that capacity in approving the stipulated settlement presented to him.

The record also reflects the parties and their respective counsel presented the stipulated settlement to Judge Meyers, for his approval, in recognition of his authority to effect a binding resolution of the issues in controversy. At the outset, Judge Meyers stated he was informed the parties had reached a stipulation to dispose of all issues to be arbitrated, and, before approving the stipulation, Judge Meyers, in the presence of a certified reporter, questioned the parties whether they understood and agreed to the terms as explicitly defined and recited on the record. They replied affirmatively.

Under these circumstances, the parties' oral stipulation must be deemed to have occurred in a *"judicially supervised"* proceeding. (See *City of Fresno* v.

*Maroot, supra,* 189 Cal.App.3d 757, 762; *Richardson* v. *Richardson, supra,* 180 Cal.App.3d 91, 97; *Datatronics Systems Corp.* v. *Speron, Inc., supra,* 176 Cal.App.3d 1168, 1173; 3 Cal. Civil Practice Proc., *op. cit. supra,* Judgment Pursuant to Stipulation, § 20.11, p. 12.) As with a stipulation presented orally before a regular judge in a courthouse setting, the parties in this proceeding, at Judge Meyers's law offices, were aware of the binding adjudicatory powers conferred upon him by the previous stipulation approved by the superior court, and must have appreciated the purpose and objective of the settlement negotiations and the final, binding nature of the oral stipulation.

For these reasons, we conclude the stipulation orally presented to Judge Meyers, and approved by him, was made "before the court" within the meaning of section 664.6.

The strong policy favoring settlement of litigation supports our conclusion. Frequently, once present and prepared to proceed with trial proceedings before a temporary judge, or arbitration proceedings before an arbitrator, the litigants will embark upon settlement negotiations before or even while engaging in the formal proceedings. Indeed, "proposals for expanded use of [alternative dispute resolution] in the courts focus on early settlement activities . . . ." (State Bar of Cal., Off. of Research, Guide to Court-Related ADR (1993) p. I-4.) In the event stipulated settlements ultimately reached in negotiations supervised by a temporary judge or an arbitrator were unenforceable under section 664.6, parties and their counsel would be discouraged from attempting to reach a final binding accord in these settings. It is doubtful whether, immediately following successful settlement negotiations supervised by a temporary judge or an arbitrator, the parties would have immediate access to a courtroom with a trial judge available and inclined to permit the parties to recite on the record the terms of a lengthy settlement agreement. During the passage of time before an oral stipulation is reduced to written form, the opportunity would arise for the parties to reconsider and renege on the settlement. Thus, the very objective of the negotiations— avoidance of the time and expense of more formal proceedings—and the purpose of section 664.6's expeditious procedure for enforcing settlement agreements, would be defeated if such settlements could not be enforced under section 664.6. (See *Gopal* v. *Yoshikawa, supra,* 147 Cal.App.3d at p. 132.)

Moreover, such a result also would impede the legislative policy of encouraging "greater use of alternative dispute resolution techniques whenever the administration of justice will be improved." (Bus. & Prof. Code, § 465, subd. (d).)

Finally, in light of our confirmation in *Moncharsh* v. *Heily & Blase, supra,* 3 Cal.4th 1, 8-13, of the broad and conclusive powers of a private arbitrator, generally precluding judicial review of substantive error of law or fact, an anomalous result would occur were we to affirm the holding of the Court of Appeal. A transcript of an arbitration hearing demonstrating gross errors of law or fact would afford no relief to an aggrieved party seeking to overturn the award on substantive grounds, but a transcription of a stipulation to settle, reflecting accurately the terms of the mutual accord reached by the parties, and confirmed on the record before the arbitrator, would be unenforceable, because the stipulation was not recited before a regular judge in a courthouse setting.

## IV

Past cases have established that, in ruling upon a section 664.6 motion for entry of judgment enforcing a settlement agreement, and in determining whether the parties entered into a binding settlement of all or part of a case, a trial court should consider whether (1) the material terms of the settlement were explicitly defined, (2) the supervising judicial officer questioned the parties regarding their understanding of those terms, and (3) the parties expressly acknowledged their understanding of and agreement to be bound by those terms. In making the foregoing determination, the trial court may consider declarations of the parties and their counsel, any transcript of the stipulation orally presented and recorded by a certified reporter, and any additional oral testimony. (*Casa de Valley View Owner's Assn.* v. *Stevenson, supra,* 167 Cal.App.3d at p. 1189; *Corkland* v. *Boscoe, supra,* 156 Cal.App.3d 989, 994.) The standard governing review of such determinations by a trial court is whether the court's ruling is supported by substantial evidence. (*Estate of Dipinto, supra,* 188 Cal.App.3d at p. 629; *Casa de Valley View Owner's Assn.* v. *Stevenson, supra,* 167 Cal.App.3d at p. 1190.)

In the present case, the trial court's determination that the parties entered into a binding settlement agreement clearly is supported by substantial evidence. As previously noted, the declarations filed in support of the motion and the transcript of the proceedings of October 1, 1990, establish that the parties, represented by counsel, engaged in settlement negotiations over an extended period of time, advised the retired judge of their desire to enter into a settlement disposing of all the matters that were to be arbitrated, explicitly defined and placed on the record the terms of the settlement, and, in response to Judge Meyers's inquiry, expressly stated they understood and agreed to those terms. Additionally, the documented correspondence between counsel during the several weeks following the October 1, 1990, proceedings discloses that wife's refusal to execute the written settlement

agreement was not based upon a belief that the written agreement did not reflect accurately the terms of the settlement to which she previously had stipulated, but instead rested upon her belated misgivings about having entered into the stipulation.

Accordingly, we conclude the trial court did not err in entering judgment, pursuant to section 664.6, enforcing the stipulated settlement.

V

The judgment of the Court of Appeal is reversed, and the matter is remanded to the Court of Appeal with directions to affirm the judgment of the superior court enforcing the settlement agreement, and to reconsider the issue of the ancillary award of sanctions.

Lucas, C. J., Arabian, J., and Peterson, J.,* concurred.

**MOSK, J.**—I dissent.

Our text in this case is Code of Civil Procedure section 664.6 (hereafter section 664.6). Our purpose is statutory construction. Section 664.6 provides: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally on the record before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."

As a general matter, this court grants review in order to "secure uniformity of decision or the settlement of important questions of law . . . ." (Cal. Rules of Court, rule 29(a).) In this proceeding, the majority secure neither. Quite the contrary. They unsettle the law as it stands today and sow the seeds for a harvest of conflict in the future. Previously, section 664.6 had consistently been construed in accordance with the plain meaning of its express terms to impose a formal requirement that parties to pending litigation must orally settle "before the court." Now, the majority remove this requirement or at least deprive it of its substance. Here, they determine that, in light of the peculiar facts disclosed by the record, husband and wife must be deemed to have orally settled "before the court." Hereafter, each and every court facing the issue will have to determine the question in light of the peculiar facts disclosed by the record therein. The majority transform

---

*Presiding Justice, Court of Appeal, First Appellate District, Division Five, assigned by the Acting Chairperson of the Judicial Council.

what the Legislature had evidently intended as a "bright line" rule into no rule at all. They do so without my support.

I

Because the Court of Appeal below satisfactorily addressed and resolved the issue in this proceeding, its opinion, prepared by Justice Dibiaso, merits quotation at length. But first, the history of section 664.6 should be set out.

Section 664.6 was originally enacted in 1981: "If parties to pending litigation stipulate, in writing or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement." (Stats. 1981, ch. 904, § 2, p. 3437.)

Section 664.6 was amended in 1993 through the addition of the italicized words: "If parties to pending litigation stipulate, in *a* writing *signed by the parties outside the presence of the court* or orally *on the record* before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. *If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement.*" (Stats. 1993, ch. 768, § 1 [No. 9 West's Cal. Legis. Service, p. 3459], italics added.)

It is section 664.6 as originally enacted that is applicable to this proceeding.

At the outset, the Court of Appeal stated the facts and the procedural background.

"On June 13, 1990, the day originally set for trial of their marital dissolution action [in the Fresno County Superior Court], Shirin D. Assemi, the wife, and Farid D. Assemi, the husband, reached a stipulation bifurcating the trial and consenting to the entry of a judgment of dissolution of marriage as to status only. A comprehensive stipulation concerning joint legal custody and joint physical custody of the couple's two minor children was also reached. The trial date was taken off calendar. In addition, the parties agreed to set the case for 'binding arbitration' and to select a retired judge to resolve the remaining disputed issues between them.

"The arbitration hearing was scheduled for October 1, 1990, at the offices of the retired judge chosen by the parties under their agreement [viz., Leonard Irving Meyers]. Shortly before the arbitration hearing began, the parties undertook settlement negotiations and informed the retired judge that

they might be able to arrive at a complete resolution of their controversy. The retired judge consented to the parties' request to postpone the hearing, with the understanding that if the case was not settled the contested proceeding would begin immediately.

"The parties, their attorneys and their [certified public accountants] spent nearly the entire day in negotiations. All remaining issues were discussed. Late that afternoon, a compromise settlement was concluded, and the retired judge was called into the room where the parties orally recited the terms of the settlement, which were recorded and later transcribed by a certified shorthand reporter. Under questioning by the retired judge, both parties acknowledged that they understood their agreement constituted a complete settlement of all of their grievances and that they understood and consented to the terms of the settlement. The retired judge stated that, as arbitrator, he accepted the settlement and that he was satisfied the parties understood it. He also explained that an order based on the arbitration was unnecessary 'because we haven't had an arbitration.'

"Although the parties, through their respective counsel, had considerable communications concerning a formal written settlement agreement, no such instrument was ever executed.[1] Ultimately, . . . husband noticed a motion requesting entry of judgment pursuant to section 664.6 and demanding attorney fees as sanctions pursuant to [former] Civil Code section 4370.6. The motion was heard on March 6, 1991. After lengthy arguments, the court ordered enforcement of the settlement pursuant to section 664.6. It found that the binding arbitration was a 'judicially supervised proceeding,' the importance and solemnity of which were understood by the parties. The court also determined that the parties understood and consented to the terms of the settlement agreement, understood it was intended to resolve the action, and understood it was to 'be a binding agreement for both of them.' "

At this point, the Court of Appeal turned to its discussion of the law.

"[Section 664.6], which took effect on January 1, 1982, provides an expedient and cost effective means of enforcing settlement agreements. (*Estate of Dipinto* (1986) 188 Cal.App.3d 625, 630 [231 Cal.Rptr. 612].) Before its enactment, parties often brought nonstatutory speaking motions to implement alleged settlement agreements. This device maintained a questionable and checkered legal standing. Though there was some support for its use, most courts criticized the procedure. (*Corkland* v. *Boscoe* (1984) 156 Cal.App.3d 989, 992-993 [203 Cal.Rptr. 356].) By the enactment of section

---

"[1] There is no evidence in this record to support a determination that the oral settlement was subject to the condition subsequent that it be reduced to writing.

664.6, the Legislature endorsed and expanded speaking motions to enforce settlement agreements. (*Corkland,* 156 Cal.App.3d at p. 994; *Richardson* v. *Richardson* (1986) 180 Cal.App.3d 91, 96 [225 Cal.Rptr. 370].)

"[Wife] contends the trial court erred when it enforced the oral agreement because the settlement was neither in writing[2] nor made 'before the court.' She claims the retired judge was not a judicial officer within the contemplation of the statute. [Husband] counters that the proceeding before the retired judge had all the indicia of a formal proceeding and therefore satisfied the spirit and intent of section 664.6.

"In *Datatronic Systems Corp.* v. *Speron, Inc.* (1986) 176 Cal.App.3d 1168 [222 Cal.Rptr. 658], during the taking of a deposition of a witness held in a private law office, the parties reached an apparent settlement of the litigation. The agreement was recorded and later transcribed by the court reporter present for the deposition. Both parties stated on the record that they understood the terms of the settlement and agreed to be bound by them. (*Id.* at p. 1170.) When one of the parties later refused to sign a formal written document reflecting the settlement arrived at during the deposition, the other party brought a motion under section 664.6. The trial court entered an order enforcing the oral agreement.

"After reviewing the extant authorities, the appellate court reversed, holding in part that 'an oral stipulation made before the court must be just that: a statement made on the record at a judicially supervised proceeding.' (*Datatronic, supra,* 176 Cal.App.3d at p. 1173.) Although the appellate court acknowledged the general policy favoring pretrial settlement of lawsuits, it was of the view nonetheless that an oral settlement made at a judicially supervised proceeding 'protect[s] the interests of the parties to the agreement and ensure[s] their full appreciation of the nature and finality of such settlement proceedings.' (*Id.* at p. 1174.) The court concluded that the deposition where the settlement agreement was orally recited was not a judicially supervised proceeding. (*Ibid.*)

"A panel of this court faced the same issue in a similar factual context in *City of Fresno* v. *Maroot* (1987) 189 Cal.App.3d 755 [234 Cal.Rptr. 353]. There, an oral settlement stipulation in a condemnation action was taken and transcribed by a certified shorthand reporter during a deposition. A written agreement was never executed by all the parties. (*Id.* at pp. 756-757, 760.)

"The *Maroot* court found *Datatronic*'s reasoning to be sound, and reversed the trial court's order enforcing the oral stipulation. 'Unless the [settlement]

---

"[2][Husband] does not dispute this assertion.

agreement is judicially supervised or in writing and signed by the parties, the intent of the parties when they verbalized the settlement is vulnerable to conflicting interpretations and the summary procedure authorized by section 664.6 should not be available.' (189 Cal.App.3d at p. 762.)

"We agree with the literal interpretation placed on section 664.6 by *Datatronic* and followed by *Maroot*. In most instances, the words 'court' and 'judge' are used synonymously in statutes, and will be construed as such when it is necessary to carry out the obvious purpose of the Legislature. (See *Mabee* v. *Nurseryland Garden Centers, Inc.* (1979) 88 Cal.App.3d 420, 424 [152 Cal.Rptr. 31]; *Newby* v. *Bacon* (1922) 58 Cal.App. 337, 339 [208 P. 1005]) In general, a 'judge' is 'a public officer, appointed to preside and to administer the law in a court of justice.' (Black's Law Dict. (6th ed. 1990), p. 841; see also Elec. Code, §§ 28 & 29.) We find nothing which suggests the Legislature meant anything different when it used the word 'court' in this statute. Accordingly, 'before the court' means precisely what it says; an oral settlement agreement is not enforceable under section 664.6 unless it has been recited on the record before a judge of a court of this state authorized to act as such under the laws of this state.

"We need not determine whether the parties' stipulation[3] in this case was one for general arbitration under [the General Arbitration Act at] Code of Civil Procedure section 1280 et seq., which applies to arbitration conducted pursuant to a private agreement between the parties, or instead one for judicial arbitration under [the Judicial Arbitration Act at] Code of Civil Procedure section 1141.10 et seq.,[4] which applies to arbitration under the auspices of the judicial system.[5] Regardless of which arbitration scheme this agreement fell into, the parties were not 'before [a] court' when they recited their settlement before the retired judge.

"[3]The agreement to submit the remaining disputed issues to a retired judge for a final decision was contained in a written 'Stipulation and Order,' which covered, in addition to the provisions concerning arbitration, a number of subjects, including the vacation of the trial date, the joint legal and physical custody of the minor children of the marriage, and the bifurcation of the trial and the entry of a judgment of dissolution of the marital status. The portion of the document comprising the stipulation was signed by the parties and their respective attorneys. The portion comprising the order was signed by Judge [Harry N.] Papadakis, acting judge of the superior court.

"[4]For purposes of this opinion, we do not consider the effect, if any, of California Rules of Court, rule 1600.5, which exempts family law actions from judicial arbitration.

"[5]The provisions of the two statutory schemes are independent and mutually exclusive. (*Porreco* v. *Red Top RV Center* (1989) 216 Cal.App.3d 113, 118-119 [264 Cal.Rptr. 609].) Private arbitration is by its essence binding while judicial arbitration offers the opportunity for a de novo trial after the arbitration has been completed. (*Porreco, supra,* 216 Cal.App.3d at pp. 118-119; see also *Blanton* v. *Womancare, Inc.* (1985) 38 Cal.3d 396, 402 [212 Cal.Rptr. 151, 696 P.2d 645, 48 A.L.R.4th 109]; Code Civ. Proc., §§ 1141.20, 1141.30, 1285.)

"Whether an agreement is one for general arbitration or one for judicial arbitration is to be determined in accord with the standard rules which apply to the construction of all contracts;

"Judicial arbitration has little connection to the courts. It has been described as a 'sabbatical from the courthouse.' (*Nanfito* v. *Superior Court* (1991) 2 Cal.App.4th 315, 319 [2 Cal.Rptr.2d 876].) ' "Judicial arbitration" is obviously an inapt term, for the system it describes is neither judicial nor arbitration. The hearing is not conducted by a judge,[6] and the right to a trial de novo[7] removes the finality of true arbitration. "Extrajudicial mediation" would be closer to correct.' (*Dodd* v. *Ford, supra,* 153 Cal.App.3d 426, 432, fn. 7.)

"While the trial court may retain some jurisdiction over cases it has ordered to judicial arbitration (see, e.g., *Nanfito* v. *Superior Court, supra,* 2 Cal.App.4th at pp. 319-320[ ]), this does not mean the proceedings before the arbitrator are 'judicially supervised.' The opposite is the case. When a timely arbitration takes place as ordered, the court will not have occasion to deal with the action unless there is a proper request for a trial de novo. (See Code Civ. Proc., § 1141.23.) If a trial de novo occurs, the award will be relevant only with respect to the fixing of costs. (See Code Civ. Proc., § [1141.21].) In addition, the fact that the California Rules of Court provide detailed provisions concerning the selection of arbitrators (see Cal. Rules of Court, rules 1601-1609) and the conduct of the hearings (see Cal. Rules of Court, rules 1610-1614) only makes the process subject to those rules; it does not make the process subject to direct judicial supervision. We find nothing in the Judicial Arbitration Act which discloses a legislative intent to treat judicial arbitrators as judges for purposes of the application of section 664.6.

"General arbitration (Code Civ. Proc., § 1280 et seq.) has even less connection to California courts. A general arbitration agreement is independently enforceable, and 'has a life of its own outside the judicial system [. . .] .' (*Byerly* v. *Sale* (1988) 204 Cal.App.3d 1312, 1316 [251 Cal.Rptr. 749].)[8] The involvement of the trial court is limited to 'hearing motions to compel arbitration and enforce any award.' (*Dodd* v. *Ford, supra,* 153 Cal.App.3d at p. 432.) The rules pertaining to the selection of arbitrators and

the decisive factor is the parties' objective intention at the time the agreement was entered into. (*Porreco,* [*supra,*] 216 Cal.App.3d at p. 119.)

"[6]A judge may, however, serve without compensation. (Code Civ. Proc., § 1141.18[, subd. (a)].)

"[7]It has been held that this right may be waived without taking the parties' agreement outside the scope of judicial arbitration. (See *Porreco* v. *Red Top RV Center, supra,* 216 Cal.App.3d at p. 119; compare *Dodd* v. *Ford* (1984) 153 Cal.App.3d [426,] 431-432 [200 Cal.Rptr. 256].)

"[8]As we earlier noted, we take no position about whether the provision in this case for binding arbitration before the retired judge made the parties' agreement one for general as opposed to judicial arbitration. (See *Dodd* v. *Ford, supra,* 153 Cal.App.3d at pp. 431-432 and *Porreco* v. *Red Top RV Center, supra,* 216 Cal.App.3d at p. 119.)"

the conduct of the hearings are matters almost entirely subject to the mutual desires of the parties. (Code Civ. Proc., § 1282.2; *Blanton* v. *Womancare, Inc., supra,* 38 Cal.3d 396, 402, fn. 5.) For example, general arbitration proceedings may be conducted by anyone selected by the parties, such as a nonlawyer with special expertise in a particular field. (*Gear* v. *Webster* (1968) 258 Cal.App.2d 57, 63 [65 Cal.Rptr. 255] [real estate agents and real estate brokers]; *Hope* v. *Superior Court* (1981) 122 Cal.App.3d 147, 150, 154-155 [175 Cal.Rptr. 851] [members of the New York Stock Exchange].) The policy underlying section 664.6 cannot favor a construction of the statute that would equate a general arbitrator with a public judicial officer or the general arbitration process with a judicially supervised proceeding.

"The lack of any requirement that a formal record be kept of judicial or general arbitration proceedings is also crucial. The Judicial Arbitration Act does not make any provision for reporters. California Rules of Court, rule 1614(b), expressly prohibits a record of the proceeding except as directed by the arbitrator for his or her personal use only. Under the General Arbitration Act, the use of court reporters is a matter left to the agreement of the parties. (Code Civ. Proc., § 1282.2.) In the absence of a formal record, where the recollections or personal notes of the attorneys, parties, or arbitrator are the only means by which the trial court on a motion under section 664.6 may determine the terms of the purported settlement, 'the intent of the parties when they verbalized the settlement is vulnerable to conflicting interpretations [. . .] .' (*City of Fresno* v. *Maroot, supra,* 189 Cal.App.3d at p. 762.) Use of a summary procedure in such circumstances is inappropriate. (*Ibid.*)

"That the parties in this case may have included provisions in their agreement which modified procedures otherwise applicable to judicial or general arbitration, or both, is immaterial. For example, the fact the parties consented to give binding effect (except for appellate review) to the retired judge's decision, or that the parties elected to employ a court reporter who was present to record the oral settlement agreement, does not transform what is not a proceeding before a court into one that is before a court. The key under section 664.6 is the identity of the officer who supervises the proceeding where the oral settlement is recited. For the same reason, it is also immaterial that the proceeding was 'solemn' or that the parties may have understood the terms and intended binding effect of the settlement agreement.

"We recognize, as did the court in *Datatronic,* that pretrial settlements are favored and are to be encouraged. (*Datatronic Systems Corp.* v. *Speron, Inc., supra,* 176 Cal.App.3d at pp. 1173-1174.) We also recognize the parties could have taken steps which might have made the settlement effective and

enforceable, such as immediately returning to the trial court and placing the agreement on the record before a family court judge or stipulating before the retired judge that the agreement become the award of the arbitrator in the arbitration proceedings. However, they did no such thing and we are not called upon here to determine whether any action of that sort would have been efficacious. On the facts before us, we cannot refuse to apply a specific statute such as section 664.6 according to its plain meaning in order to carry out some purpose that does not appear on the face of the statute. (*People* v. *Knowles* (1950) 35 Cal.2d 175, 182-183 [217 P.2d 1].) The Legislature is certainly free to amend section 664.6 if it wishes.

"There is no other basis in this record upon which to conclude the parties were before a court when they recited the oral settlement agreement. The retired judge was not acting in the capacity of a temporary judge under Article VI, section 21 of the California Constitution or California Rules of Court, rule 244. The parties did not stipulate to the appointment of a judge pro tem[pore]. They stipulated instead to have a retired judge act as an arbitrator to resolve the issues remaining in dispute between them. There is no evidence of an order for the appointment of a temporary judge executed by the presiding judge of the Fresno County Superior Court. There [is] no evidence the retired judge took or subscribed to the oath of office of temporary judge, and no written, executed oath was attached to the parties' stipulation. (See Cal. Rules of Court, rule 244.)

"It is true the strict requirements of [California Rules of Court,] rule 244 are not jurisdictional. (*In re Horton* (1991) 54 Cal.3d 82, 90 [284 Cal.Rptr. 305, 813 P.2d 1335].) California case law has recognized for some time that voluntary participation before a subordinate officer who lacks authority in that capacity may be tantamount to an agreement that he or she act as a temporary judge. Thus, in a matter tried before a referee of the superior court, it has been held where the parties acted in accordance with the rulings of the referee, strict compliance with rule 244 is not necessary. (*In re Mark L.* (1983) 34 Cal.3d 171, 178-180 [193 Cal.Rptr. 165, 666 P.2d 22].) Similarly, a court commissioner may conduct a trial in a capital case where no oral or written stipulation of the parties authorized the commissioner to sit as a temporary judge but where defense counsel, knowing the officer was a court commissioner, proceeded to trial without objection. (*In re Horton, supra,* 54 Cal.3d at pp. 91-93.) However, this tantamount-to-a-stipulation rationale has thus far been applied to cases involving official court referees and commissioners before whom proceedings were conducted without adequate written stipulations. (*In re Mark L., supra,* 34 Cal.3d 171, 178-179.) Here, it is undisputed the retired judge was not an appointed and sworn commissioner or referee of a court of this state, and he did not purport to be acting as a temporary judge of the superior court.

"Finally, the evidence does not support a conclusion that the retired judge was a special master appointed by the Superior Court or that he acted in an official capacity as a retired judge assigned by the Chief Justice of California to perform the duties of a judge of the Fresno County Superior Court. (See Article VI, section 6 of the California Constitution and Government Code section 68543.8.)" (Fn. omitted.)

The Court of Appeal disposed of the matter of sanctions in short order.

"At the hearing on the motion under section 664.6 the trial court also entered an order, at . . . husband's request, awarding him sanctions under [former] Civil Code section 4370.6. The propriety of this order is also raised by . . . wife as an issue on appeal.

"We need not decide the merits of the parties' respective contentions on this subject concerning the scope and application of [former] Civil Code section 4370.6. . . . [H]usband's request for sanctions was only ancillary to his motion to enforce the oral agreement. The trial court's decision on sanctions was based upon its determination that the oral agreement was enforceable; it is obvious the court would not have made an award of fees and costs had it denied . . . husband's section 664.6 motion. Our reversal of the enforcement order therefore necessitates reversal of the sanctions order. [Headings omitted from quoted opinion.]"

The Court of Appeal rendered judgment accordingly.

## II

The majority are contrary to the Court of Appeal. Their reasoning is different. So is their result. They are wrong.

As originally enacted in 1981, section 664.6 had consistently been construed in accordance with the plain meaning of its express terms to impose a formal requirement that parties to pending litigation must orally settle "before the court"—specifically, before the judge presiding over the action or at least before a settlement conference judge. (See, e.g., *City of Fresno* v. *Maroot* (1987) 189 Cal.App.3d 755, 760-762 [234 Cal.Rptr. 353]; *Datatronic Systems Corp.* v. *Speron, Inc.* (1986) 176 Cal.App.3d 1168, 1171-1174 [222 Cal.Rptr. 658] (per Arguelles, P. J.).) The provision had also been construed to impose a supporting formal requirement that parties to pending litigation must orally settle "before the court" *on the record.* (See, e.g., *Nicholson* v. *Barab* (1991) 233 Cal.App.3d 1671, 1683, fn. 4 [285 Cal.Rptr. 441]; *Datatronic Systems Corp.* v. *Speron, Inc., supra,* 176 Cal.App.3d at p. 1173.)

Early in 1993, the Court of Appeal below gave the Legislature an all but express invitation to abrogate section 664.6's formal "before the court" requirement if it so chose.

In amending section 664.6 later in 1993, the Legislature declined this invitation. It did the opposite. It reenacted the formal "before the court" requirement in its original words. At the same time, it expressly added the supporting formal "on the record" requirement.

In parts of their opinion, the majority appear simply to remove section 664.6's formal "before the court" requirement. This, of course, they cannot do. They cannot repeal statutory provisions.

In other parts of their opinion, the majority appear "merely" to deprive section 664.6's formal "before the court" requirement of its substance. They do so by rewriting the phrase in question as "before the court *or a 'quasi-court'*" (see maj. opn., *ante*, at p. 909 [stating that the retired judge "was empowered to act in a *quasi-judicial* capacity" (italics added)]) or "before the court *or an arbitrator*" (see *id.* at pp. 906-911). Neither can they do this. They cannot amend statutory provisions.

The majority's rewriting of "before the court" as "before the court *or a 'quasi-court'*" deserves little comment. It is tantamount to repeal.

The majority's rewriting of "before the court" as "before the court *or an arbitrator'*" deserves comment only slightly more extensive. They assert that the "1993 amendment . . . was part of" a bill that "related primarily to . . . arbitration . . . ." (Maj. opn., *ante*, at p. 905, fn. 5.) Had the Legislature intended what they claim to discover, it would surely have spoken the word "arbitrator" or one of its cognates. It did not. Its silence is deafening. Section 664.6 expressly covers only "parties to pending *litigation*." Persons in arbitration need not be, and often are not, litigants the one against the other. The majority's rewriting of "before the court" as "before the court *or an arbitrator*" leads inexorably to a rewriting of "parties to pending litigation" as "parties to pending litigation *or arbitration*" which would allow a person in arbitration to obtain entry of judgment *even if there is no underlying litigation.* The majority imply that they seek to avoid "anomalous result[s]." (Maj. opn., *ante*, at p. 911.) But how else to characterize what follows from their own analysis? It is surely untenable for them to assert that an "anomalous result" would occur if "before the court" is read as "before the court" and *not* "before the court *or an arbitrator*." (*Ibid.*) That a person who has agreed to general arbitration *may usually be held* to the arbitrator's decision (*Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1, 8-13 [10 Cal.Rptr.2d 183,

832 P.2d 899]) plainly does not compel, or even support, the conclusion that he *must always be held* to his own words.

The illegitimacy of the majority's efforts to remove section 664.6's formal "before the court" requirement or at least deprive it of its substance becomes evident through the following illustration.

When parties to pending litigation enter into a settlement, they enter into a contract. Such a contract is, of course, subject to the general law governing all contracts. (Cf. *T.M. Cobb Co.* v. *Superior Court* (1984) 36 Cal.3d 273, 277-283 [204 Cal.Rptr. 143, 682 P.2d 338] [speaking of offers by a party to compromise under Code Civ. Proc., § 998].) Part of that general law is the statute of frauds. (Civ. Code, § 1624; see *Nicholson* v. *Barab, supra,* 233 Cal.App.3d at p. 1682 [holding that settlements are subject to the statute of frauds]; *Texaco, Inc.* v. *Ponsoldt* (9th Cir. 1991) 939 F.2d 794, 799-800 [same, applying California law].) The statute of frauds declares certain contracts invalid "unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent . . . ." (Civ. Code, § 1624.) Such contracts include, among others, "agreement[s] . . . for the sale [or transfer] of real property, or of an interest therein" (*id.,* § 1624, subd. (c)). Agreements of this kind are commonly implicated in settlements. Such is the case here. In the oral settlement in this proceeding there is a provision for the transfer by husband to wife of an interest in real property, specifically, the family residence.

Obviously, the Legislature may exempt settlements otherwise within the coverage of the statute of frauds from invalidity thereunder. It may do so expressly. It may apparently also do so impliedly, to the extent that such settlements are "enforceable" under section 664.6. (See *Nicholson* v. *Barab, supra,* 233 Cal.App.3d at p. 1683, fn. 4 [declining to "address the issue of whether . . . settlement agreements, made orally on the record before the court, in compliance with . . . section 664.6 need also comply with the statute of frauds"].)

Just as obviously, however, a court may not make any similar exemption. It may not do so expressly. It may not do so impliedly, by construing section 664.6 beyond the plain meaning of its express terms, as the majority do here. What the court said in *Nicholson* v. *Barab, supra,* 233 Cal.App.3d at page 1683, is pertinent: "We note that there is a well-established policy in the law to discourage litigation and favor settlement. Pretrial settlements are highly favored because they diminish the expense of litigation. . . . [¶] In spite of [this] policy . . . , however, we can find no reason to exempt settlement agreements from the statute of frauds where the statute of frauds would otherwise be applicable."

It must be emphasized that to construe section 664.6 in accordance with the plain meaning of its express terms to impose the formal "before the court" requirement is not to frustrate the policy of discouraging litigation and favoring settlement. That is because the "statutory procedure for enforcing settlement agreements under section 664.6 is not exclusive. It is merely an expeditious, valid alternative statutorily created. [Citation.] Settlement agreements may also be enforced by motion for summary judgment, by a separate suit in equity or by amendment of the pleadings to raise the settlement as an affirmative defense." (*Nicholson* v. *Barab, supra,* 233 Cal.App.3d at p. 1681.)

On one point at least, the majority are right. To construe section 664.6 in accordance with the plain meaning of its express terms to impose the formal "before the court" requirement might arguably yield untoward consequences in certain cases. But any formal requirement whatsoever might lead to such outcomes. The Legislature imposed the requirement by enacting and amending the provision as it did. It must have been aware of the possibility of varying outcomes. It must also have found such a possibility tolerable. Whether or not this court agrees is simply immaterial.

### III

For the reasons stated above, I would affirm the judgment of the Court of Appeal.

Baxter, J., concurred.

**KENNARD, J.**—I dissent.

The Legislature, by statute, has defined the conditions under which a court may grant a party's motion to enforce an agreement to settle pending litigation. The Legislature has decided that a court should grant such a motion if, but only if, (a) the agreement is in writing and signed by the parties, or (b) the agreement has been recited "before the court." (Code Civ. Proc., § 664.6 [hereafter section 664.6].) In this case, the majority has taken it upon itself to enlarge the statutory scheme to include, as a third situation in which a court may grant a motion to enforce a settlement agreement, recitation of the agreement before a person who, though not an active or even a temporary judge, has been granted adjudicatory powers in the pending action by stipulation of the parties. The majority concludes that this situation, though not literally within the terms of the statute, is, somehow, close enough. I disagree.

A basic rule of law, rooted in the doctrine of separation of powers, states that courts may not enlarge the terms of a statute. (Code Civ. Proc., § 1858

["In the construction of a statute or instrument, the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted . . . ."].) Although the line between permitted construction and forbidden enlargement is not always easy to discern, courts must proceed with special caution when dealing with statutes that balance competing interests, because any deviation from the literal terms of the statute may disturb the balance that the Legislature has carefully struck. Section 664.6 is such a statute.

In deciding the conditions under which settlement agreements should be enforced, the Legislature undoubtedly sought to further the strong public policy in favor of settlement agreements. But this is not the only interest at stake. If it were, the Legislature would have enacted a much broader statute, permitting parties to enforce by motion virtually any settlement agreement that promised to terminate the litigation in whole or in significant part. That the Legislature did not enact such a statute shows its sensitivity to other values worthy of consideration.

Another interest at stake here is the parties' interest in avoiding the loss of valuable rights through agreements they do not fully understand or have not carefully considered. Because litigation is enormously expensive, and court resources are strained to the limit, pressure to settle is intense. Under the weight of this pressure, a party may give an indication of assent to settlement terms without fully comprehending their meaning or appreciating their consequences. By providing that the agreement be reduced to writing and signed, or recited and assented to in the presence and under the supervision of a duly sworn judicial officer, the Legislature has sought to protect parties against hasty and improvident settlement agreements by impressing upon them the seriousness and finality of the decision to settle. (See *City of Fresno* v. *Maroot* (1987) 189 Cal.App.3d 755, 762 [234 Cal.Rptr. 353].)

There is also a substantial public interest in avoiding unnecessary litigation. Nothing is gained if the price of settling a lawsuit is a new round of litigation about the meaning or enforceability of the settlement agreement. To avoid this new round of litigation, the terms of the agreement and the parties' assent thereto must be memorialized in a way that minimizes later factual disputes. By requiring either a writing signed by the parties or a recitation before a duly sworn judicial officer who can be counted upon to make the inquiries necessary to clear up any ambiguities, the Legislature has sought in section 664.6 to protect this interest.

Should the scope of section 664.6 be enlarged to include settlement agreements recited before an arbitrator who is not an active or temporary

judge? This is a question for the Legislature, not this court. Enlarging the statute in this fashion allows enforcement of a few settlement agreements that could not be enforced under the literal terms of section 664.6, but in doing so it encroaches somewhat on the other interests at stake.

The interest of the parties in avoiding poorly understood and improvident agreements seems to be of little concern to the majority. The majority states that when parties have reached a settlement, any delay resulting from lack of immediate access to a courtroom would permit parties to renege and thereby impede use of alternative dispute resolution devices. (Maj. opn., *ante*, p. 910.) I submit that any agreement so fragile that it collapses on the way to the courthouse does not truly reflect mature and deliberate assent by the parties and for that very reason should not be enforced.

The interest of the judiciary in establishing a record that eliminates factual disputes likewise receives scant consideration by the majority. Here, the arbitrator did not participate in the settlement negotiations. When the agreement was recited before him, the arbitrator made no effort to clarify the agreement's terms, and he accepted at face value, without further inquiry, the parties' statements that they understood the agreement. Because the arbitrator reasonably believed that his role in the litigation was at an end, it is not surprising that he made no further effort to make a record that would minimize later factual disputes and provide solid assurance that the parties' assent to the agreement was knowing and voluntary.

The Court of Appeal correctly concluded that the statutory conditions under which a court is permitted to enforce a settlement agreement on motion by a party are not present here. Rather than rewrite the statute, I would affirm the judgment of the Court of Appeal.