Filed 7/18/14  Marriage of Malcolm CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re the Marriage of DIANE and BRUCE MALCOLM. | |
| DIANE MALCOLM,  Respondent,  v.  BRUCE MALCOLM,  Appellant. | E056910  (Super.Ct.No. FAMVS900669)  OPINION |

APPEAL from the Superior Court of San Bernardino County.  David R. Proulx, Temporary Judge (pursuant to Cal. Const., art. VI, § 21), and Dennis G. Cole, Judge. (Retired judge of the San Bernardino Super. Ct., assigned by the Chief Justice pursuant to art. VI, § 6, of the Cal. Const.)  Affirmed.

Law Offices of Michael J. La Cilento and Michael J. La Cilento for Appellant.

Law Office of James J. Kenny and James J. Kenny for Respondent.

1

# I

## INTRODUCTION

Appellant Bruce Malcom urges this court to reverse and vacate a marital dissolution judgment entered by the trial court on June 12, 2012. The trial court judgment incorporates a judgment entered by Retired Judge Cole, which Bruce argues is invalid because he did not agree orally or in writing to Cole serving as judge for all purposes. Bruce asserts that Cole was acting merely as a nonbinding mediator/arbitrator who was assisting the parties with settlement and did not have authority to enter a final judgment.

We conclude there was substantial evidence supporting the trial court's determination that the parties had stipulated to referring the case to Retired Judge Cole for all purposes, including mediation and trial. The trial court therefore appropriately ordered Cole's judgment entered as the final judgment in the case, and judgment is affirmed.

# II

## FACTS AND PROCEDURAL BACKGROUND

Bruce Malcolm and Diane Malcolm married in September 2000, and separated in January 2009. In March 2009, Diane filed a petition for dissolution and an amended petition. On January 23, 2009, Diane's employment from the family business was terminated.

*September 23, 2009 Hearing*

On September 23, 2009, during an order to show cause (OSC) hearing regarding

2

attorneys fees, costs, and property control, Diane's attorney, James Kenny, explained that the parties had agreed that Bruce would pay the mortgage, utilities, and $2,000 a month in spousal support. The OSC was continued from May 2009 to the date of the September 23, 2009 hearing to allow a cooling off period. Kenny requested the court to adopt the portions of the agreement regarding the mortgage, utilities, and spousal support. Kenny acknowledged that he anticipated Bruce would claim he had not agreed to those items but Kenny asserted that "there would be no reason to continue an initial OSC with no support orders and [Diane] unemployed and with no money, continue an initial OSC for four months unless there was an agreement." Kenny further requested the court to make a new spousal support order effective October 1, 2009, for $4,162 per month. Bruce's attorney, Michael Donnelly, argued there was no agreement as to the amount of spousal support and Bruce could not pay support or the mortgage because there was no money to make the payments.

The trial court ordered, pursuant to a stipulation submitted to the court, that Bruce pay the mortgage and utilities. The court further ordered Diane reimbursed for payments on the mortgage and utilities she made from May 1, 2009, until October 1, 2009. The court also found that the parties had agreed that Bruce would pay $2,000 per month in spousal support, beginning May 1, 2009. The trial court further ordered Bruce to pay $4,162 in spousal support and pay Diane's attorney's fees totaling $26,000, with $6,000 already paid and $20,000 owing. Trial was set for December 9, 2009.

On December 8, 2009, Diane and Bruce's attorneys, signed a stipulation and order on behalf of their clients, agreeing that "The parties shall forthwith schedule and attend a

3

*4-Way Settlement Conference* in Rancho Cucamonga for the purpose of attempting to resolve all issues. Said *4-Way Settlement Conference* shall take place on or before December 30, 2009." It was also agreed the stipulation and order would be submitted to the court for approval at the hearing on December 9, 2009, and, upon its approval, the December 30, 2009 hearing would "be continued until a mutually convenient date for purposes or resolving any residual issues." The Stipulation and Order were filed on January 29, 2010.

In May 2010, Diane's attorney notified the court the parties were working on a settlement and, as requested, the May 25, 2010 OSC hearing was taken off calendar. In August 2010, Bruce's employer notified him that his work hours were being reduced to part-time employment because of the recession, which was forcing Bruce's employer to reduce overhead. In November 2010, Bruce filed an OSC re modification of orders regarding spousal support and attorneys fees on the ground he had been placed on part-time employment status, with about a 50 percent reduction in income because of a decrease in construction work due to the recession.

*January 19, 2011 Hearing*

On January 19, 2011, the trial court conducted a hearing on Bruce's OSC re modification of spousal support and attorneys fees orders. Diane and Bruce were both present at the hearing. Diane's attorney told the court he believed the court should not hear the matter because the parties had been litigating the case in front of Retired Judge Cole since March 2010. Kenny acknowledged that he, Donnelly (Bruce's former attorney), and Cole "did not cross the T's properly on paperwork in terms of getting an

4

appropriate stipulation. But we've all submitted to this jurisdiction, and [Cole] in fact has issued a tentative decision as to all issues." Kenny said the parties were attempting to schedule a final session to complete the matter. Kenny, who appeared at the hearing telephonically, therefore requested the court to either "continue this to a date when I can be present and argue it, or two, simply refer it to Judge Cole pursuant to the parties' agreement to have him hear all issues in this case."

Bruce's new attorney, Stephen Miller, acknowledged he had recently substituted in as Bruce's attorney and informed the court that he had searched for an agreement or court order suggesting that the case had been transferred to IVAMS (Inland Valley Arbitration and Mediation Services) for all purposes. Miller said the parties met with Cole and it was Miller's understanding the process was solely a mediation. Miller believed there was no binding referral transferring the case from the court to IVAMS. The court responded that it did not intend to refer the matter to IVAMS absent a clear indication IVAMS had sole authority. Miller told the court Bruce was in dire need of an order modifying spousal support, even if temporary, because of his drastic reduction in income.

Kenny requested that he be permitted to obtain a declaration from Judge Cole to show that the matter was not being mediated: "[T]he true facts are we agreed that he would be judge for all purposes, and that he would render a decision in the matter, and as I indicated, he previously had indicated in writing a tentative decision as to all issues in the case. [¶] I think it's not appropriate to simply change the vehicle with which we're hearing the case after everyone appeared in front of Judge Cole and agreed in front of a

5

Retired Superior Court Judge that he would have exclusive jurisdiction, and he would hear the case."

The court asked Kenny if he had a document stating that Cole had exclusive jurisdiction. Kenny said he did not. There was no written stipulation. However, the parties and their attorneys appeared in front of Cole and participated in a multiple-day proceeding, resulting in Cole issuing a tentative decision as to all issues, including spousal support. Kenny argued that even though there was no written stipulation, the parties asked Cole to make a binding decision as to all issues in the case.

The court then calculated spousal support based on the current information provided to the court and proposed modifying support, without prejudice, and reserving retroactivity and setting another OSC hearing to give the parties an opportunity to contest the modification order. Kenny again requested to return the following week for a hearing during which he would establish that the current hearing was improper because the matter was submitted to Cole for all purposes.

The trial court set a hearing on February 4, 2011, to revisit the issues raised in the current hearing, including jurisdiction, and ordered Bruce to pay Diane monthly spousal support in the amount of $2,088 a month, beginning February 1, 2011. The order was temporary, without prejudice, and with retroactivity reserved.[1]

---

[1] The minute order incorrectly refers to the court-ordered support as child support. The reporter's transcript shows that the court ordered spousal support, and there was no mention of child support during the hearing.

6

*February 4, 2011 Hearing*

On February 4, 2011, the trial court addressed the question of whether the matter had been properly referred to Cole for all purposes. The court stated that it had reviewed letters that clearly indicated the parties had agreed to engage in alternate dispute resolution (ADR) with Cole and, in one of the letters, Bruce's attorney had stated, "we're going to go with Judge Cole through initial settlement discussions and trial."

Bruce's attorney, Miller, stated that Bruce believed Cole's findings were not binding or final because Cole was engaging in settlement discussions with the parties as a mediator. In Cole's April 22, 2010 letter, Cole "suggested if he's going to proceed as a judge and make a final decision in particular with a possible waiver of any appeal rights, he would need, my words, are knowing and intelligent, but I think the Court should find it would have to be a knowing and intelligent waiver by the parties of the fact that he had served as the mediator and had heard settlement positions and proposals and engaged in mediation." Miller noted that once a judge serves as a mediator in a case and hears settlement positions, the mediator cannot try the case unless there is a knowing and intelligent waiver in writing.

Miller acknowledged he had looked at numerous letters and there were letters in which Bruce's former attorney, Donnelly, agreed to Cole deciding the matter. Miller said it appeared that Cole was urging the parties to settle and the case should only be before Cole for mediation purposes. Bruce did not want Cole to make a final decision and lose the right to appeal. Miller and Kenny met with Cole around October 2009 and told him they wanted to continue mediation. Kenny indicated that he thought IVAMS had

7

exclusive jurisdiction. Miller told Cole he disagreed and asked Kenny to show him a written agreement to IVAMS jurisdiction. This same dispute, over whether there was a written binding agreement to submit the matter to IVAMS for all purposes, was raised at the January 2011 hearing. Miller asserted there was no agreement divesting the trial court of jurisdiction over the case.

In response, Kenny stated that the December 9, 2009 hearing was continued. Cole's April 22, 2010 letter stated how Cole proposed to resolve the case. Bruce did not like Cole's proposal and therefore did not mention it to the trial court. Rather, Bruce attempted to persuade the trial court to decide the matter differently; more favorably to Bruce. Kenny noted the only missing document was an oath of office, which normally Cole and the court would sign when the court referred a case to him. There was an oral agreement referring the matter to Cole, confirmed by Cole's letter and Donnelly's letter.

Kenny further stated that, in addition, the parties and their attorneys all appeared in front of Cole and the parties agreed to the reference and that Cole be the judge for all purposes. Kenny argued that such agreement was binding. It was confirmed in writing by Bruce's attorney, Donnelly, and by Cole in letters dated March 8, 2010, April 22, 2010, and May 19, 2010. Bruce's attorney, Donnelly, in his May 19, 2010 letter said that "We agreed that [Cole] would be able to make a ruling on all issues that would be binding upon our clients with a waiver of right to appeal."

The court noted it had never signed an oath of office transferring a matter from the court to a mediation center. Kenny replied that, normally, a document referred to as an oath of office is used, consenting to a retired judge acting as a judge for all purposes. The

8

retired judge signs their oath of office and the referring judge also signs the form. In the instant case there was no signed oath of office form. There were only referral letters, stating that the matter was referred to Cole, and the parties' affirmation in front of Cole directly. In Kenny's opinion, the oath of office form did not have to be signed before the matter was sent to Cole as a binding reference for all purposes but it did need to be signed before Cole issued his ruling. Kenny believed Miller and Bruce could be ordered to sign the form because they already stipulated and consented to the binding referral in writing and orally before Judge Cole.

Miller acknowledged that "indisputably there was contemplated a reference, a transfer of this case to Judge Cole and probably for all purposes." Miller argued that, nevertheless, Bruce was required personally to waive knowingly and intelligently his due process and procedural rights, and there was nothing showing that Bruce had done this. Miller noted that Cole stated in his April letter that he had not seen a written agreement by the parties, agreeing to binding authority to decide the matter.

Kenny responded that Bruce never took any steps to opt out of the IVAMS referral and that the parties entered into a binding agreement to go to IVAMS. Therefore the court should order the parties to sign whatever documents were necessary to complete the process and return to Cole for completion of the proceedings. The court should also vacate the January 19, 2011 order because it was made after the matter was submitted to IVAMS. Kenny also requested the court to sign the wage assignment order enforcing the spousal support and attorney fees orders made before the matter was submitted to IVAMS.

9

After hearing argument and reviewing the parties' OSC papers, the trial court found, based on Donnelly's March 8, 2010 letter, that the parties agreed that Cole would, not only assist in attempting to settle the matter, but also try the matter if it did not settle. The court directed the parties to cooperate with Cole in completing the case and carry out their duties pursuant to their agreement, including attempting to settle the matter and, if unable to settle, participating in trial conducted by Cole.

Miller responded that the trial court had not made a finding that the parties knowingly and intelligently waived their rights so that Cole could serve, not only as mediator, but also as judge in the case. The court agreed it was not making that finding because that determination was to be made by Cole, not the trial court.

*Cole's December 13, 2011 Judgment*

After trying the matter, Cole issued a judgment of marital dissolution on December 13, 2011. The judgment included division of marital property and debts. It also ordered Bruce to pay $4,162 in spousal support, spousal support arrearages, and attorney's fees arrearages. On December 14, 2011, the court clerk returned the judgment, stating the court "cannot file this status not taken/no default or response."

*May 29, 2012 Ex Parte Motion to Enter Judgment*

On May 29, 2012, the trial court heard an ex parte motion for entry of default against Bruce and entry of Cole's judgment. Several days before the hearing, Bruce substituted in Michael La Cilento. La Cilento informed the court that Bruce had intended to allow default judgment to be entered against him. La Cilento requested a noticed hearing on Diane's motion for entry of judgment and objected to entry of default

10

judgment. La Cilento asserted that Bruce never waived his rights to a full evidentiary hearing and trial in the trial court.

Kenny told the court he had brought the matter ex parte because Bruce was attempting to secrete assets awarded to Diane, was not paying spousal support or house payments, refused to sign over the home to Diane, and refused to sign the judgment. Kenny said he was not opposed to the trial court entering default judgment as long as the court entered Cole's judgment. Kenny noted that the trial court had previously ordered the parties to return to Cole to complete the case, which was done. Kenny then prepared a judgment in accordance with Cole's findings, which Cole signed on December 13, 2011. Kenny explained that it had been "a procedural minefield to get it entered by the clerk, and that's the reason for the ex parte. But there's no substance that we're asking for. We're simply saying this has already been tried to a concordant; you've got the judgment. Please order the judgment filed." Kenny told the court it did not need to enter a second judgment. The court had relinquished jurisdiction to Cole and therefore merely needed to order the court clerk to file Cole's judgment.

The trial court found there was no emergency and therefore set on June 12, 2012, a noticed hearing for the OSC request for entry of judgment. The court initially concluded it had no authority over the matter other than to enter the judgment signed by Cole, but requested the parties to file responsive papers on the matter.

*June 12, 2012 Hearing on Diane's Motion for Entry of Judgment*

On June 12, 2012, the trial court conducted a hearing on Diane's motion seeking entry of Cole's judgment. La Cilento argued that Bruce and his attorney never signed a

11

waiver allowing Cole to act as both mediator and judge in the case. He also argued the trial court did not decide the jurisdiction issue during the February 4, 2011 hearing. La Cilento attempted to quote an email by Mary Gutierrez, IVAMS case administrator and Cole's clerk,[2] to establish what Cole knew when he signed the judgment. The trial court sustained Kenny's hearsay objection to the email. The trial court explained that whatever Gutierrez stated in her email regarding Cole's ruling was hearsay and it must be assumed Cole knew what he was signing when he executed the judgment.

The trial court noted that Cole's judgment did not include the signatures of the parties. La Cilento said that was because Bruce did not stipulate to the judgment, since the proceeding was a mediation. The trial court responded that at the February 4, 2011 hearing, the trial court found, based on a March 8, 2010 letter from Donnelly, that the parties had agreed to use Cole through IVAMS to conduct the mandatory settlement conference (MSC) and trial in the matter.

La Cilento noted there was an April 22, 2010 letter from Cole stating that he was "comfortable dealing with spousal support and attorneys' fees."[3] Cole did not say he was determining all issues in the case. Therefore it was ambiguous whether Cole had binding authority to decide all issues in the case. Bruce claimed he never agreed to Cole having binding authority to decide the case and never waived his constitutional rights to a court trial. La Cilento also argued there was no signed writing by Bruce, agreeing to binding

---

[2] Bruce's responsive pleading to Diane's motion for entry of judgment included a declaration by La Cilento's secretary, Alma Suarez and an e-mail from Mary Gutierrez. These documents are not included in this court's clerk's transcript.

[3] The April 22, 2010 letter is not included in this court's clerk's transcript.

arbitration and such a writing was required. La Cilento maintained that Cole did not know what the scope of his authority was (despite having signed a judgment). The trial court again noted the court had already determined that the parties had agreed that Cole was going to hear the MSC and trial.

Kenny explained to the trial court that there was no arbitration. The case was submitted as an ADR matter, in which the parties agreed to have the trial court refer the case to Cole, as judge pro tem. Kenny acknowledged that the parties did not sign a stipulation. Kenny noted that, nevertheless, the trial court had previously ruled in February 2011 that the matter was to be heard by Cole for all purposes pursuant to Donnelly's letter. A year later on April 30, 2012, the trial court signed an order with findings stating that the parties had agreed Cole "would hear the matter for all purposes including settlement conferences to attempt to resolve the matter and trial if necessary."[4]

Kenny noted that Cole originally signed a judgment on December 7, 2011, but the court clerk's office lost it when it was submitted for filing. On December 13, 2011, Cole signed a second identical judgment to replace the lost one. The trial court rejected that judgment because there was no "status not taken" or "default or response" in the case. Bruce later filed a response on May 25, 2012. The trial court ordered the parties' marriage dissolved and directed the clerk's office to enter the judgment signed by Cole

---

**4** The April 30, 2012 trial court order is not included in this court's clerk's transcript. The trial court quoted the April 30, 2012 order during the hearing on June 12, 2012.

13

on December 13, 2011.  On June 12, 2012, over Bruce's objection, the trial court entered judgment incorporating Cole's judgment filed on December 13, 2011.

III

COLE'S AUTHORITY TO DECIDE CASE

This appeal turns on whether Cole had binding authority to decide this case and issue a judgment, filed in the trial court as a final, enforceable judgment.

In proceedings under the family law statutory scheme (Fam. Code, § 2000 et seq.), "as an expeditious means of resolving disputed issues, trial courts frequently appoint a subordinate court officer to whom is delegated, pursuant to the stipulation of the parties, the authority to render binding factual findings or judicial determinations.  (See *In re Marriage of Olson* (1993) 14 Cal.App.4th 1, 8, fn. 5 ['The best and least expensive method of resolving disputes such as (the family law dispute in *Olson*), is for the parties to stipulate not only to the appointment of a special master, but also that the special master be empowered to determine the issues . . . .'].)  Depending upon the stipulation of the parties, such an officer may serve in the capacity of a temporary judge pursuant to article VI, section 21, of the California Constitution; an arbitrator under the private contractual arbitration provisions of [Code of Civil Procedure,] sections 1280-1288.8;[] or a referee pursuant to section 638.  [Citations.]"  (*In re Marriage of Assemi* (1994) 7 Cal.4th 896, 907 (*Assemi*).)

In the instant case, Diane argues the parties agreed Cole would serve as a temporary judge.  Under article VI, section 21, of the California Constitution, "On stipulation of the parties litigant the court may order a cause to be tried by a temporary

14

judge who is a member of the State Bar, sworn and empowered to act until final determination of the cause." (Cal. Const., art. VI, § 21.) Under California Rules of Court, rule 2.831,[5] formerly rule 244, "To invoke the constitutional authority empowering a temporary judge to act in this capacity, the parties must submit, for approval of the presiding or supervising judge of the court, a written stipulation designating the proposed temporary judge, and the temporary judge (unless a court commissioner) must take and file an oath of office. [Citation.] Once a temporary judge has taken an oath of office, he or she has the same authority as a regular judge [citation], basically is bound by the same rules of evidence and procedures as those applicable in superior court trials, and is empowered to render an appealable judgment in the same manner as a regular judge. [Citations.]" (*Assemi, supra,* 7 Cal.4th at p. 908.)

---

[5] The California Rules of Court will be referred to as "rule."

Rule 2.831, states the following procedures for appointing a temporary judge:
"**(a) Stipulation**
"When the parties request that an attorney be designated by the court to serve as a temporary judge on a case, the stipulation of the parties that a case may be tried by a temporary judge must be in writing and must state the name and office address of the member of the State Bar agreed on. The stipulation must be submitted for approval to the presiding judge or the judge designated by the presiding judge.
"**(b) Order, oath, and certification**
"The order designating the temporary judge must be signed by the presiding judge or the presiding judge's designee and refer to the stipulation. The stipulation and order must then be filed. The temporary judge must take and subscribe the oath of office and certify that he or she is aware of and will comply with applicable provisions of canon 6 of the Code of Judicial Ethics and the California Rules of Court.
"**(c) When the temporary judge may proceed**
"The temporary judge may proceed with the hearing, trial, and determination of the cause after the stipulation, order, oath, and certification have been filed."

15

Stipulated binding arbitration differs from the stipulated use of a temporary judge to decide a case: "The role of an arbitrator acting pursuant to a private written agreement to arbitrate, in proceedings governed by the private arbitration statutory scheme ([Code of Civ. Proc.] § 1280 et seq.), differs from that of a temporary judge in several respects. The arbitrator need not be sworn or take an oath of office in order to serve in that capacity. The arbitration proceedings are *not* governed by the rules of evidence or judicial procedures applicable to superior court trials, unless the arbitration agreement provides otherwise. (§ 1282.2, subd. (d).) The arbitrator issues an award, rather than a final appealable judgment, and a party to the proceedings must petition the court to confirm, correct, or vacate that award (§ 1285), with limited grounds for correction (§ 1286.6) or vacation (§ 1286.2) being available; additionally, the arbitrator's decision generally is not reviewable for errors of fact or law [citation])." (*Assemi, supra,* 7 Cal.4th at p. 908.)

In the present proceedings, the role served by Cole pursuant to the parties' stipulation and order corresponded more closely to the functions and characteristics of a temporary judge than to those of an arbitrator. The parties contemplated that the proceedings would be governed by the rules and procedures applicable in superior court trials, and that Cole would render a decision having the same finality as a trial judgment.

*Stipulation to Use Cole as a Temporary Judge for All Purposes*

Bruce contends he never agreed to Cole having authority to make a binding determination in the case. Bruce claims he only agreed to nonbinding mediation and did not stipulate to referral of the case to Cole for all purposes, including a trial.

During the OSC hearing on February 4, 2011, the trial court adjudicated the issue of whether the parties agreed to Cole deciding the case. After considering evidence submitted by the parties and oral argument, the trial court found that, even though there was no written stipulation signed by the parties or recorded transcript of an oral stipulation, there was sufficient evidence establishing that the parties had agreed to refer the case to Cole for all purposes.

The parties agree no express stipulation is in the record. Diane argues such an agreement may be implied from the conduct of the parties and letters confirming an unrecorded oral stipulation. We agree. In *In re Mark L.* (1983) 34 Cal.3d 171, 178-179, the Supreme Court found that an agreement that a commissioner would sit as a temporary judge could be implied from the conduct of the parties during the course of the proceedings. "[S]everal cases recognize that voluntary participation before a subordinate officer who lacks authority in that capacity may amount to an agreement that he acted as a temporary judge." (*Id.* at p. 178; see also *In re Lamonica H.* (1990) 220 Cal.App.3d 634, 645 (*Lamonica*).)

There was substantial evidence supporting the trial court's factual determinations during the February 4, 2011, and June 12, 2012 hearings that the parties orally or impliedly stipulated to Cole serving as a temporary judge for all purposes in the case. The evidence, consisting of letters confirming the parties agreement to using Cole in the case, is not included in the record on appeal. However, language from the letters was quoted during the trial court hearings and the content of the letters was discussed by counsel and the court.

17

The proper standard of review of the trial court's factual determination that the parties agreed to refer the case to Cole for all purposes is whether the court's findings and rulings were supported by substantial evidence. "We make '"[a]ll presumptions favor the trial court's ruling, which is entitled to great deference because the trial judge, having been present at trial, necessarily is more familiar with the evidence and is bound by the more demanding test of weighing conflicting evidence rather than our standard of review under the substantial evidence rule." (*Rony v. Costa* (2012) 210 Cal.App.4th 746, 753-754.)

Since Bruce has not provided this court with the actual letters and pleadings presented to the court during the February 4, 2011, and June 12, 2011 hearings, we must rely on a limited record, which shows there was substantial evidence supporting the trial court's finding that Bruce personally agreed to Cole serving as a temporary judge for all purposes, including trial, with the intent that Cole's evidentiary findings and decision would be binding. It was not until Bruce reviewed Cole's proposed decision that he challenged Cole's authority to enter a binding judgment.

The evidence relied on by the trial court in finding that Bruce personally stipulated to referral of the case to Cole for all purposes included three letters, dated March 8, 2010, April 22, 2010, and May 19, 2010. The trial court stated during the February 4, 2011 hearing that it had reviewed the letters and concluded that the letters "clearly indicate that there was an agreement by the parties to engage in ADR with Judge Cole. There's a reference in one of the letters I think it's Bruce's counsel writing to Diane's counsel that says *we're going to go with Judge Cole through initial settlement discussions and trial*.

18

There's a reference to trial there." (Italics added.) Bruce's attorney, Miller, even acknowledged during the hearing that he had looked at numerous letters and there were letters in which Bruce's former attorney, Donnelly, agreed to Cole deciding the matter. Miller stated that "indisputably there was contemplated a reference, a transfer of this case to Judge Cole and probably for all purposes."

Kenny informed the court at the February 4, 2011 hearing that there had been an oral agreement by the parties to refer the matter to Cole, and the agreement was confirmed by Cole and Donnelly's letters, and by the parties appearing before Cole and agreeing to referral of the matter for all purposes to Cole. Donnelly's March 8, 2010 letter to Kenny, confirmed that Cole would conduct an MSC and trial in the case. Cole stated in his April 22, 2010 letter that, if no settlement was reached, he would rule on the case based on the pleadings. Donnelly again confirmed in his May 19, 2010 letter that "We agreed that [Cole] would be able to make a ruling on all issues that would be binding upon our clients with a waiver of right to appeal." Kenny noted that Bruce never took any steps to opt out of the IVAMS referral and that the parties entered into a binding agreement to go to IVAMS.

During the hearing on June 12, 2012, the trial court again considered evidence and heard argument on the issue of whether the parties agreed to Cole trying the case. None of the evidence submitted, including evidence presented by Bruce's new attorney, La Cilento, is included in the record on appeal. The trial court noted during the hearing that at the February 4, 2011 hearing, the trial court considered a March 8, 2010 letter from Donnelly to Kenny. The letter stated: "[T]his letter confirms that we have agreed to use

19

Judge Dennis Cole retired through IVAMS to conduct the MSC and trial in the above matter." The letter further discussed how the mediation would be handled, mentioned that Cole would try the case if the case did not settle, and stated, "all Victorville court matters will be taken off calendar." The trial court concluded the court had already determined that the parties had agreed Cole was going to conduct the MSC and trial.

In response to La Cilento arguing that Bruce had not signed any writing agreeing to binding arbitration, Kenny explained that the case was not an arbitration; it was submitted as an ADR matter, pursuant to an agreement to have the trial court refer the case to Cole, as a judge pro tem. Kenny stated that on April 30, 2012, the trial court signed an order stating the trial court's findings and ruling on February 4, 2011. The April 30, 2012 order stated: "Diane and Bruce agreed that retired judge Dennis Cole would hear the matter for all purposes including settlement conferences to attempt to resolve the matter and trial if necessary. Their agreement was confirmed in a letter dated March 8th, 2010. Bruce did not inform this Court in his Order to Show Cause of the agreement. Neither party has taken steps to opt out of the ADR proceedings with Judge Cole. This Court makes no other findings. This case is referred back to Judge Cole. Parties are ordered to cooperate with Judge Cole, execute any documents necessary to enable Judge Cole to carry out his duties to either settle the case or conduct a trial and render a decision on the merits."

Giving due deference to the trial court as trier of fact, we conclude that the record supports the trial court's finding that the parties, with the assistance of their attorneys,

20

agreed Cole would, not only mediate the case, but also, in the event the case did not settle, resolve the matter by trial.

*Oath of Office Requirement under Rule 2.831*

Bruce argues Cole's judgment is unenforceable because Cole did not execute an oath of office empowering Cole to act as a temporary judge. However, at the February 4, 2011 hearing, after the trial court found that the parties had stipulated to referring the case to Cole for all purposes, the court ordered compliance with all requirements for Cole to try the case, which included Cole executing an oath of office. There is no evidence this was not done prior to Cole trying and entering judgment in the case.

Furthermore, evidence the parties stipulated to referring the case to Cole indicates that the parties may have contemplated that Cole would serve in some hybrid capacity not clearly consistent with either the position of a temporary judge or that of an arbitrator under the private arbitration statutes, in which case Cole was not required to execute an oath of office. As an arbitrator, Cole would have been "empowered to exercise the adjudicatory functions of an arbitrator (if not a temporary judge) with the authority to render a binding determination of the controverted issues submitted to him by the parties, whether that determination was in the nature of a final judgment, subject to ordinary appellate review, or an arbitrator's award subject to the procedures of the private arbitration statutory scheme. As such, his role was closely analogous to that of a judge, in a judicial proceeding, empowered to exercise what are essentially judicial functions. 'Arbitrators are judges chosen by the parties to decide the matters submitted to them, finally . . . .' [Citation.]" (*Assemi, supra,* 7 Cal.4th at p. 909.)

21

Regardless of whether the parties intended that Cole serve as a temporary judge, private arbitrator, or hybrid adjudicator, Bruce initially waived any requirement that Cole execute an oath of office by not objecting until the February 4, 2011 hearing. And there is no evidence that, thereafter, Cole did not execute an oath of office or that Bruce objected to Cole not having done so.

Even though there was no written, signed stipulation by the parties to Cole serving as a temporary judge for all purposes in the case and even if Cole did not execute an oath of office, Cole's judgment is not void. In addressing the issue of whether the failure to comply with rule 244 (now rule 2.831) rendered a judgment by a temporary judge void, the court in *In re Robert S.* (1988) 197 Cal.App.3d 1260, 1264 (*Robert S.*) concluded: "Despite the existence of an express stipulation on the record, defendants would have us elevate the method for memorializing a stipulation set forth in rule 244(a) [rule 2.831] to the level of a constitutional prerequisite to clothing an attorney selected under that rule with the powers of a temporary judge. We decline to do so. [¶] In reaching our conclusion that the failure to comply with rule 244(a) does not void the judgment, we rely, in the first instance, on the plain language of article VI, section 21, of the California Constitution, which requires only that there be a 'stipulation of the parties litigant.' The cases interpreting the constitutional provision have rejected any requirement that the stipulation be express. [Citations.]" The court in *Robert S.* stated that "a valid stipulation may be implied from conduct." (*Ibid.*; see also *In re Lamonica H., supra,* 220 Cal.App.3d at pp. 640-641, 643.)

The court in *Robert S.* further held that the appellant waived his objection to noncompliance with rule 244(a) by failing to object and by participating in the proceedings: "Based on the omission of the requirement that the selection of a temporary judge be subject to the rules of the Judicial Council, we conclude that compliance with rule 244(a) is not a constitutional prerequisite to empowering a temporary judge to act. [¶] Having concluded that compliance with rule 244(a) was not a prerequisite to the court's jurisdiction, we hold that an objection to the proceeding, based on the absence of a written stipulation pursuant to rule 244(a), was waived not merely by defendants' failure to object, but also by their express consent to the proceedings. We agree with the *Oaxaca* court that ""It would seem . . . intolerable to permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware and thereby permitting the proceeding to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not."" (*People v. Oaxaca* [(1974)] 39 Cal.App.3d 153, 164.)" (*Robert S., supra,* 197 Cal.App.3d at p. 1265.)

Rejecting *In re Heather P.* (1988) 203 Cal.App.3d 1214 and *In re Damian V.* (1988) 197 Cal.App.3d 933, the courts in *In re Richard S.* (1991) 54 Cal.3d 857, 864-865, *In re Lamonica H., supra,* 220 Cal.App.3d at p. 637 and *Robert S., supra,* 197 Cal.App.3d at p. 1265, held that the rule 244 requirement of a written stipulation is directory rather than jurisdictional, and knowing participation in the proceedings before a retired judge acting as a temporary judge will be deemed tantamount to a stipulation. The *Robert S.* court also rejected the contention that, "in order to vest the court with

23

jurisdiction, the stipulation must be made before any evidence has been presented." (*Robert S.,* at p. 1265.)

Concurring with *In re Robert S.*, the court in *In re Lamonica H., supra,* 220 Cal.App.3d 634, explained that rule 244 requirements are directory because, "Whether consent is oral, written, express or implied, if in fact a party agrees to proceed before a referee and thereafter receives a ruling on the merits from the referee, his reasonable expectations have been fulfilled.  Thus the detailed procedure set forth in rule 244 appears to us designed to serve collateral interests of the judicial system.  By requiring a written instrument, the rule prevents disputes as to whether parties have in fact consented and the scope of their consent.  [Citation.]  By further requiring the written approval of a supervising judge and an oath, the rule insures that the activities of temporary judges are monitored and do not impair the administration of the trial courts.  These interests are entirely unrelated to [the appellant's] interest in having his dispute heard in a competent and unbiased tribunal."  (*In re Lamonica H., supra,* 220 Cal.App.3d at p. 644; see also *In re Richard S., supra,* 54 Cal.3d at pp. 864-865.)

Although *Lamonica H.* concerns a referee, rather than a temporary judge or arbitrator, the reasoning in *Lamonica H.* applies equally to using a temporary judge or arbitrator.  Even if there was no oath of office in that instant case, which Bruce has not established, under *Richard S.*, *Lamonica H.* and *Robert S.*, this does not render Cole's judgment unenforceable and void.

24

*Code of Civil Procedure Section 664.6*

Bruce argues the trial court erred in entering Cole's judgment as the final judgment in the case because it did not qualify under Code of Civil Procedure section 664.6 as an enforceable stipulated judgment. Code of Civil Procedure section 664.6 is inapplicable because Cole's judgment was not a stipulated judgment. As relevant here, Code of Civil Procedure section 664.6 provides that parties to pending litigation may *stipulate to settlement* of a case, and "the court, upon motion, *may enter judgment pursuant to the terms of the settlement*. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." (Italics added.) Here, the case was not settled. Cole conducted a trial and thereafter entered a judgment in the case. The only issue here is whether Cole had authority to try and issue a binding judgment. The trial court found Cole had such authority. We conclude there was substantial evidence supporting that finding, as discussed above. Therefore the trial court appropriately ordered Cole's judgment entered as the final judgment.

*Family Code Section 2122*

Bruce alternatively urges this court to vacate Cole's judgment under Family Code section 2122, subdivisions (a) and (e), which provide:

"The grounds and time limits for a motion to set aside a judgment, or any part or parts thereof, are governed by this section and shall be one of the following: [¶] (a) Actual fraud where the defrauded party was kept in ignorance or in some other manner was fraudulently prevented from fully participating in the proceeding. An action or

25

motion based on fraud shall be brought within one year after the date on which the complaining party either did discover, or should have discovered, the fraud. [¶] . . . [¶] (e) As to stipulated or uncontested judgments or that part of a judgment stipulated to by the parties, mistake, either mutual or unilateral, whether mistake of law or mistake of fact. An action or motion based on mistake shall be brought within one year after the date of entry of judgment."

Family Code section 2122 is inapplicable because Bruce did not file a motion to set aside Cole's judgment based on fraud or mistake. Furthermore, there is no evidence in the record supporting findings of fraud or mistake. Bruce argues he was defrauded by Kenny, "who drafted an allegedly 'Stipulated' Judgment to be signed by Judge Cole which neglected to have the signatures of either parties nor any statement which denoted that each party understood the Stipulation and were assenting to it." Bruce further argues "Judge Cole's signing of the allegedly 'Stipulated' Judgment was a mistake in that he may have been led to believe that all the parties had assented to the terms of the agreement."

Extrinsic fraud, as basis for equitable relief from judgment, occurs where a party is deprived of the opportunity to present a claim or defense to the court, where the party is kept in ignorance, or where a party is in some manner fraudulently prevented from fully participating in the proceeding. (*Kuehn v. Kuehn* (2000) 85 Cal.App.4th 824, 832-833 (*Kuehn*).) In the instant case, there is no evidence of this. Bruce had the opportunity to contest Cole's proposed judgment. Bruce's attorney was served with a copy of the proposed judgment and notice of entry of judgment on December 7, 2011, before Cole

26

signed the judgment on December 13, 2011.  He did not object to the judgment at that time, and the judgment was reviewed and signed by Cole, a retired judge.  Bruce also had the opportunity at the February 4, 2011, and June 12, 2012 hearings to contest the judgment on the grounds the parties had not signed Cole's "stipulated" judgment.

Furthermore, the judgment was not a stipulated judgment and therefore did not require the parties' signatures.  Although Cole's judgment incorrectly states the parties stipulated to the judgment, it is clear it was not a stipulated judgment since it was only signed by Cole and had no signature lines for the parties.  There is no evidence that Cole was misinformed or misled into believing that the parties agreed to the judgment.  He reasonably could have assumed Bruce did not object to it because he did not propose an alternative judgment or notify Cole or Diane's attorney of any objections to the judgment. In addition, the trial court reviewed Cole's judgment at the hearing on June 12, 2012, during which Bruce again had the opportunity to challenge Cole's judgment under Family Code section 2122, and did not do so.

The trial court judgment incorporating Cole's judgment reflects that Cole and the trial court were aware that Cole's judgment was not a stipulated judgment and, over Bruce's objection, ordered Cole's judgment entered as the final judgment in the trial court.  The final judgment states that the matter was "contested" and tried by Cole through IVAMS, with judgment of dissolution entered on June 12, 2012.  The judgment further states that spousal support and property division were ordered pursuant to Cole's attached judgment.  Although Cole's judgment, which is attached to the trial court form judgment, incorrectly states the parties agreed to the terms of his judgment, the form

27

judgment indicates the parties did not stipulate to the judgment. The provision included on the judgment form, stating "settlement agreement, stipulation for judgment, or other written agreement," is not selected, thus indicating, along with the absence of the parties signatures, that the parties had not stipulated to the judgment. In addition, Bruce was served with a copy of Cole's proposed judgment and did not object to the proposed judgment or notify Cole of any inaccuracies in the judgment.

Fraud is intrinsic and not a valid ground for setting aside a judgment when the party has been given notice of the action and has had an opportunity to present his case and to protect himself from any mistake or fraud of his adversary, but has unreasonably neglected to do so. (*Kuehn, supra,* 85 Cal.App.4th at p. 833.) In the instant case, Bruce had an opportunity to present his case, object to Cole's judgment, and challenge any mistake, fraud, or errors in the judgment. In addition, the parties' assent to the judgment and signatures were not required, since the judgment was not a stipulated judgment. Bruce has not demonstrated any fraud or mistake requiring this court to vacate the judgment under Family Code section 2122, subdivisions (a) or (e).

*Code of Civil Procedure Section 1286.2*

Bruce argues that under Code of Civil Procedure section 1286.2, subdivision (a)(4), the trial court is required to vacate Cole's judgment because Code of Civil Procedure section 1286.2, subdivision (a)(4), requires the court to vacate an arbitration award if the arbitrator exceeded his powers and the award cannot be corrected without affecting the merits of the decision. Bruce has not established that the proceeding in the instant case was subject to Code of Civil Procedure section 1286.2, which applies to

private arbitrations. Furthermore, as discussed above, Bruce has not established that Cole exceeded his powers when he entered judgment in the case. The record on appeal shows that the parties agreed that, if mediation was unsuccessful, Cole, acting as a temporary judge, would try the case and his decision would be binding. Cole tried the case and issued a decision. Bruce did not notify Cole that he objected to Cole's proposed judgment.

Bruce also cites several cases in support of the proposition that the trial court, not the arbitrator, shall decide the enforceability of an arbitration agreement. The cases, which include *Bayscene Resident Negotiators v. Bayscene Mobilehome Park* (1993) 15 Cal.App.4th 119, *All Points Traders, Inc. v. Barrington Associates* (1989) 211 Cal.App.3d 723, 736-737, *Loving & Evans v. Blick* (1949) 33 Cal.2d 603, and *Bianco v. Superior Court* (1968) 265 Cal.App.2d 126, 129, are not on point here. They concern reversing a binding arbitration award on the ground the underlying arbitrated claims were founded on illegal, unenforceable contracts. That is not at issue here. The issue here is whether Cole had authority to try the case and enter a binding judgment based on the parties' agreement to refer the case to Cole for all purposes. The trial court decided that factual issue during the hearing on February 4, 2011, and we conclude substantial evidence supported the trial court's finding. Not only is Code of Civil Procedure section 1286.2, subdivision (a)(4), inapplicable but, in addition, Cole did not exceed his powers in issuing a decision in this case.

29

IV

DISPOSITION

The judgment is affirmed.  The parties are ordered to bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON_____

J.

We concur:


McKINSTER_____
          Acting P. J.


KING_____
          J.