Filed 4/7/25  Cong v. Tsao CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| CHUNPING CONG, | B330541 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KC068926) |
| v. | |
| JASON TSAO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Salvatore Sirna, Judge.  Affirmed.

The Law Office of Carlos A. Lloreda, Jr., and Carlos A. Lloreda, Jr., for Defendant and Appellant.

Tiedt & Hurd, John E. Tiedt and Matthew Ferris for Plaintiff and Respondent.

———————————————

Defendant and appellant Jason Tsao appeals from a judgment entered pursuant to the terms of a settlement under Code of Civil Procedure section 664.6.[1] Tsao contends the trial court erred in entering judgment because the parties' oral stipulation to settle did not result in a valid and binding agreement. We affirm the trial court's entry of judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 1998, plaintiff and respondent Chunping Cong and her husband came to California from China on temporary visas to open a marble and granite business. They formed a California corporation, C&L Marble Products, Inc. Cong was the sole shareholder and director. Cong purchased real property in Pomona in the company's name (the Pomona property).

In 2000, Cong and her husband returned to China, intending to stay for one to two months. They hired Tsao, Cong's husband's cousin, to manage the business while they were away. In December 2000, Cong planned to return to California, but her visa application was denied because she had overstayed her previous visa. Cong has been unable to travel to the United States since she left in 2000.

According to Cong, between 2001 and 2013, Tsao assured Cong and her husband that their business was in safe hands. However, in 2016, Cong discovered that in August 2001, Tsao changed the name of C&L Marble Products to Kingstone Marble, Inc. In 2002, Tsao transferred the Pomona property and all other company assets to himself and dissolved the company. Cong claims Tsao took these actions without her knowledge or consent.

---

[1] All further undesignated statutory references are to the Code of Civil Procedure.

2

In 2016, Cong filed a complaint against Tsao asserting causes of action for fraud, breach of fiduciary duty, conversion, and unjust enrichment, and seeking declaratory relief, an accounting, and a constructive trust. Tsao filed a cross-complaint against Cong, her husband, and her children, alleging that Cong and her husband failed to pay back money they borrowed from Tsao to keep C&L Marble Products solvent, and claiming they never compensated him for managing the company. In 2020, the parties filed cross-motions for summary judgment. The court granted Cong's motion and denied Tsao's motion.[2]

The court bifurcated the trial on Cong's claims. In the first phase, the trial court addressed Tsao's statute of limitations defense, concluding that the statute of limitations barred Cong's claims as to all but one company asset, the Pomona property. In the second phase, the court held a bench trial to determine liability and damages.

On July 1, 2022, Tsao testified. Cong's counsel questioned him about corporate bylaws he signed establishing him as: the sole director, president, secretary, and chief financial officer of C&L Marble Products; the sole person authorized to contract on behalf of the company; and the holder of 10,000 shares of stock. When asked if any document reflected the transfer of the shares from Cong to Tsao, Tsao testified that Cong had signed corporate meeting minutes transferring her company stock to him. He asserted these minutes showed Cong had agreed to make Tsao president of the company and allowed Tsao to transfer the

---

[2] This court dismissed Tsao's appeal from the order on the summary judgment motions because no appealable judgment or order had been entered. (*Tsao v. Cong, et al.* (Aug. 17, 2021, B312067).)

3

Pomona property from C&L Marble Products to himself. According to Tsao, Cong signed the minutes in China. Tsao testified he did not have the signed minutes in his possession because about a year or two after the lawsuit was filed, he had given the "corporate minute book" containing the document to his prior attorney, who had not returned it. Tsao testified he had no photocopies or electronic copies of the document and was unsure if his former attorney still had it. He did not recall whether he had returned to the attorney's office to determine whether the attorney had the minutes.

Cong's counsel asked Tsao why, when asked to confirm at his deposition in July 2019 that there was no "corporate minute book" or "any documents of any nature establishing that [he was] president of the company," Tsao responded affirmatively without mentioning that there was a corporate minute book in the possession of his former attorney. Tsao testified that he did not tell counsel about the corporate minute book because, at the time of his deposition, Tsao had "misplaced it."

Before breaking for lunch on July 1, 2022, the court told Tsao's counsel, Carlos Lloreda, Jr., "Maybe you can try to negotiate and settle this case over the lunch hour. I'm directly speaking to you, Mr. Lloreda. Maybe you can initiate something with [Cong's counsel] about resolving this case."

The court reconvened two hours later. Lloreda informed the court the parties had reached "a full settlement of the entirety of the actions comprising this lawsuit," and stated the settlement was "to be supervised by the court under [section] 664." The court asked, "Are you going to write it out or put it on the record here today?" Lloreda responded, "Put it on the record." The transcript reflects the following exchange:

4

"The court: Let's start over so everything is captured on the record. To my understanding, there is a settlement, Mr. Lloreda; is that correct?

"Mr. Lloreda: Yes. There is a full settlement of the entirety of the actions comprising this lawsuit and case number.

[¶] . . . [¶]

"The court: . . . Obviously, it's going to be written out, and what you would do is just stipulate to [section] 664.6.

"[Cong's counsel]: Correct.

"Mr. Lloreda: With the terms to be in a mutual general relation [*sic*]. We'll also specify the file [*sic*] of dismissal with prejudice as to the cross-complaint.

[¶] . . . [¶]

"The court: . . . So who wants to recite the terms of the settlement. And if you can slowly recite those so that [Cong's son] can translate those terms to his mom in Mandarin. Go ahead, Mr. Lloreda.

"Mr. Lloreda: The parties do herein agree to settle all claims comprising the instant complaint and the cross-complaint comprising this lawsuit, this case number, and the terms will be that Defendant Tsao will pay to Plaintiff the sum of $270,000 on or before November 1st, 2022. $270,000—I'm sorry. $273,000 on or before November 1st. Of course each party bears their own attorney fees and costs. The $270,000 will be paid on or before November 1st pursuant to a mutual general release that both parties will execute. . . .

5

[¶] . . . [¶]

"Mr. Lloreda: The parties have agreed that this settlement shall not be confidential.  It will not be confidential.  The parties will release each other from all claims, as well as Defendant releasing any claims they would have furtherances [*sic*] of the subject of property located on Mission Boulevard here in Pomona, and it will be, of course, a supervised settlement pursuant to [Code of Civil Procedure] section 664 and --

"The court: Mr. Lloreda, before we go forward, say that term again with regards to the property. What happens to the property?

"Mr. Lloreda: The defendants will sign a release of them releasing all their claims—or the plaintiffs—pardon me.  The plaintiffs will be signing a release as to all claims they may have in the subject property."

Cong's son translated the terms into Mandarin for Cong, who was participating remotely by telephone.  The court then asked Cong if she agreed to those terms; she responded she did. The court then asked, "And, Mr. Tsao, you agree; correct?"  Tsao responded, "Yes."  The court instructed the parties to memorialize the terms in writing and execute mutual release agreements.  The court scheduled an Order to Show Cause Re: Dismissal for November 2022.

A week later, Cong's counsel sent a draft of a written settlement and release agreement to Tsao.  Tsao requested to extend the deadline to pay the settlement by one month, to which Cong agreed.  Lloreda then sent Cong's counsel a revised draft of the written agreement in which he added terms not mentioned in

6

open court or, according to Cong's counsel, discussed during settlement negotiations, including a term allowing Tsao to sue Cong's husband in China. After further discussion, the parties reached a final written agreement. However, Cong's counsel did not receive a fully executed agreement from Tsao. Instead, Tsao's counsel informed him that Tsao "would be rescinding the settlement based on the discovery of new evidence."

In August 2022, Tsao filed a motion to rescind the settlement agreement. According to Tsao, while he was cleaning out the Pomona property in preparation to sell it to pay the settlement, he found a copy of the corporate meeting minutes, signed by Cong, establishing Tsao as company president and transferring all company stock to him. Tsao argued the settlement agreement should be rescinded because the "misplacement" of the signed meeting minutes was a "mistake of fact." He contended that absent the mistake, he would never have agreed to the settlement because the minutes proved his defense.

Tsao attached the minutes to his declaration supporting the motion. The two-page document ostensibly memorializes a July 12, 2001 meeting between Cong and Tsao, as directors and shareholders of C&L Marble Products, at the corporation's "principal office."[3] On the first page, the minutes reflect that Tsao was elected president, chief financial officer, and secretary of C&L Marble Products. They further state "[t]hat the undersigned member(s) of the Corporation, have agreed to transfer their entire ownership interests and stocks to Jason Tsao effective immediately." On the second page, the minutes

---

[3] The by-laws established that the Pomona property served as the "principal office location" of the company.

7

required modification of the corporate by-laws to show Tsao "owns One Hundred Percent of the corporation's stocks, transferring hereby the full ownership interest in the corporation" to him. Below, the document bears the handwritten signature of "Ping Cong."

Tsao retained a Certified Questioned Document Examiner to determine the authenticity of Cong's signature on the minutes. Tsao submitted her report in support of the motion to rescind. She examined the signature on the minutes and compared it to Cong's signature on other documents. The examiner concluded there was "a strong probability the Chun Ping Cong of the known signatures did sign the questioned corporate meeting minutes" and it was "more likely than not" that she signed the minutes.

Cong opposed the motion. She contended the signed minutes document was not newly discovered because Tsao had produced the first page in discovery in 2019. She further argued the purported minutes were "false and misleading." She asserted she did not meet with Tsao on July 12, 2001, and could not have because she was in China at the time and could not return to the United States due to problems with her visa. She denied signing or otherwise approving the document. Alternatively, Cong contended that Tsao's "misplacement" of the document was not a mistake of fact because his inability to find it was due to his neglect.

In August 2022, Cong filed a motion to enforce the settlement under section 664.6. Cong asked the court to enforce the settlement on the terms to which the parties orally stipulated before the court. In opposition, Tsao argued the newly discovered minutes revealed that Cong's case was "premised upon a lie." He also reasserted his arguments from the motion to rescind.

In January 2023, the court held a hearing on both motions. The court denied Tsao's motion to rescind and granted Cong's motion to enforce the settlement agreement. The court found that when they orally stipulated to the settlement, both parties were represented by counsel and were "fully aware of the risks and benefits of entering into such an agreement." The court further reasoned that at the time of the settlement, the "lost" minutes were not available and, "had the matter proceeded to trial, this document that Mr. Tsao later found would not have been presented at trial." In the court's written order, the court concluded Tsao failed to establish grounds for rescission because his belief that the signed minutes were lost was not " 'the kind of mistake which renders a contract voidable . . . .' " The court found Tsao had known "that the document could still exist and assumed the risk that the document could turn up at a later date" when he entered into the settlement agreement.

In February 2023, Cong filed a motion to enter judgment since Tsao continued to refuse to pay the settlement amount. Tsao opposed the motion. Although the court had already determined the settlement agreement was valid and enforceable, Tsao asserted additional arguments challenging the validity of the agreement. Tsao contended the settlement agreement was unconscionable because Cong lied when she denied transferring her assets to Tsao; the agreement was voidable because it was based on the parties' mutual, mistaken assumption that the signed meeting minutes could not be found; the court failed to "explicitly define" all settlement terms; the court failed to confirm Tsao's understanding of the terms of the agreement or the finality of the agreement; and the court afforded Tsao insufficient time to understand the settlement terms before he agreed to

9

them.

The court rejected Tsao's arguments, ruling: "Because the court has already found a valid settlement agreement exists, Tsao does not have any legal ground to refuse to make the agreed upon payments."  The court entered judgment in favor of Cong in the amount of $273,000 with interest.  Tsao timely appealed from the judgment.

## DISCUSSION

On appeal, Tsao again challenges the validity of the settlement agreement.  Tsao asserts the parties had no meeting of the minds with respect to the confidentiality and release terms; Cong's fraudulent misrepresentation that she did not sign the minutes transferring her ownership interests voided the parties' agreement; and the trial court failed to properly supervise the oral stipulation to settle under section 664.6.  Tsao forfeited the first two arguments by failing to raise them in the trial court.  We reject the third argument and conclude substantial evidence supported the trial court's finding that the parties entered into a valid, binding settlement agreement.  We also deem forfeited the arguments Tsao raised only in his reply brief on appeal.

I.    **Tsao's Arguments Challenging the Validity of the Parties' Oral Agreement Fail**

A.    **Applicable legal principles**

Section 664.6, subdivision (a) provides, in relevant part: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement."  The Legislature enacted section 664.6 to establish "a summary, expedited procedure to enforce settlement

10

agreements when certain requirements that decrease the likelihood of misunderstandings are met." (*Levy v. Superior Court* (1995) 10 Cal.4th 578, 585.)

In ruling on a motion to enter judgment under section 664.6, "the trial court acts as a trier of fact. It must determine whether the parties entered into a valid and binding settlement." (*Kohn v. Jaymar-Ruby, Inc.* (1994) 23 Cal.App.4th 1530, 1533 (*Kohn*).) "[A] trial court's factual findings concerning whether a settlement agreement explicitly defined the material terms, and whether the parties expressly acknowledged their understanding of and agreement to be bound by those material terms, are reviewed for substantial evidence." (*Eagle Fire & Water Restoration, Inc. v. City of Dinuba* (2024) 102 Cal.App.5th 448, 470.)

"Consistent with the venerable substantial evidence standard of review, and with our policy favoring settlements, we resolve all evidentiary conflicts and draw all reasonable inferences to support the trial court's finding that these parties entered into an enforceable settlement agreement and its order enforcing that agreement." (*Osumi v. Sutton* (2007) 151 Cal.App.4th 1355, 1360.)

> **B.      Tsao forfeited his contention that no settlement agreement was formed because there was no meeting of the minds**

Tsao first contends that the parties had no meeting of the minds regarding the general release and waiver of confidentiality. Because Tsao did not raise this theory below, it is forfeited.

" 'As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties

11

must adhere to the theory (or theories) on which their cases were tried.  This rule is based on fairness—it would be unfair, both to the trial court and the opposing litigants, to permit a change of theory on appeal . . . .' [Citation.]" (*Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997 (*Nellie Gail*).) " 'Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. . . .  Bait and switch on appeal not only subjects the parties to avoidable expense, but also wreaks havoc on a judicial system too burdened to retry cases on theories that could have been raised earlier.' [Citation.]" (*Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1519 (*Brandwein*).)

Even if Tsao had not forfeited the argument, the trial court correctly concluded that the parties mutually assented to the confidentiality and mutual general release terms at the time they entered into the oral stipulation.  Tsao's counsel read into the record the terms that the parties "agreed that this settlement shall not be confidential" and "will release each other from all claims . . . ."  Cong and Tsao gave their unequivocal assent to the terms.  Although the parties indicated they intended to reduce the agreement to writing, there is no evidence to suggest the parties did not intend the oral stipulation to be binding unless and until a formal written agreement was executed. (*Elyaoudayan v. Hoffman* (2003) 104 Cal.App.4th 1421, 1430 ["nothing tentative" about binding effect of oral agreement where attorneys read the settlement in the record and ensured each party agreed, even absent written agreement].)  The parties' post-agreement disputes have no bearing on the enforceability of the parties' oral agreement to the settlement terms before the court.

(*Id*. at p. 1431 ["If difficulties or unresolvable conflicts arise in drafting the written agreement, the oral settlement remains binding and enforceable under section 664.6."]; *Kohn, supra*, 23 Cal.App.4th at p. 1534 [oral agreement binding where "all that remained to be done was a reduction of the agreement to a writing"].)

Accordingly, we find no merit to Tsao's contention that no contract was formed.

## C. Tsao forfeited his argument that the settlement was voided by Cong's purported fraud

Tsao asserts a second theory not raised below, namely, that Cong fraudulently misrepresented that she did not sign the 2001 minutes to induce his agreement to settle. He contends Cong lied to "induce" him to pay money and he was "forced to rely" on her misrepresentation because he could not find the signed minutes to support his defense. As we understand his argument, he appears to assert Cong's alleged fraud voided the settlement agreement.

Tsao did not contend below that the settlement agreement was invalid or subject to rescission due to fraud. He instead "assert[ed] throughout the entire lawsuit that Plaintiff had signed all ownership interest in and control of" the company to him, but that he had mistakenly believed the document corroborating his claim was irretrievably lost. Tsao contended Cong lied about not signing the minutes in his opposition to Cong's motion to enforce the settlement. But he made no specific argument based on fraudulent misrepresentation, instead urging the trial court to deny Cong's motion to enforce the settlement "so that justice may prevail." Consequently, neither the trial court nor Cong had any opportunity to address Tsao's argument that

13

rescission was warranted because Cong made fraudulent misrepresentations he justifiably relied on in deciding to settle. Tsao has therefore forfeited these arguments on appeal. (*Nellie Gail, supra,* 4 Cal.App.5th at p. 997; *Brandwein, supra,* 218 Cal.App.4th at p. 1519.)

### D. The trial court adequately supervised the parties' oral stipulation to settle

Finally, Tsao contends that the parties' oral stipulation to settle on July 1, 2022, did not create a binding agreement because the trial court's supervision of the stipulation was deficient. Specifically, Tsao contends that during the July 1, 2022 afternoon session, the trial court participated for only 15 minutes, failed to ensure the parties understood the terms and the consequences of the settlement, and failed to clarify ambiguities in the parties' terms. This argument fails on the merits.

Tsao argues that no valid agreement was formed because the trial court failed to specifically ask the parties whether they *understood* the material terms and binding nature of the agreement. Tsao cites *In re Marriage of Assemi* (1994) 7 Cal.4th 896 (*Assemi*) and *Kohn, supra,* 23 Cal.App.4th 1530, to argue that this omission invalidated the oral stipulation. However, neither case establishes this as a standard for adequate judicial supervision of an oral stipulation under section 664.6.

In *Assemi,* our high court considered whether substantial evidence supported a trial court's determination that the parties entered into a binding oral stipulation to settle a dissolution proceeding. (*Assemi, supra,* 7 Cal.4th at pp. 901–904, 911.) The court held that trial courts making that determination "should consider" whether the judge supervising the oral stipulation

14

"questioned the parties regarding their understanding" of settlement terms and whether the parties "acknowledged their understanding of and agreement to be bound." (*Id.* at p. 911.) Yet, the *Assemi* court did not hold that an oral stipulation to settle is only binding or enforceable if the judge supervising the stipulation asks formulaic questions to confirm a party's understanding of, or agreement to, the settlement terms.[4] Instead, *Assemi* provided a nonexclusive list of factors to enable the trial court to determine whether the parties entered into a binding settlement.

*Kohn* is illustrative.  The court in *Kohn* concluded there was substantial evidence of a binding settlement under section 664.6 where the trial court's minutes stated a settlement was reached at a mandatory settlement conference, a letter from the respondent's counsel the following day identified the terms parties agreed to, and the appellant did not object that the terms as stated by the respondent were inaccurate.  (*Kohn*, *supra*, 23

---

[4]     At least one court has found that in amending section 664.6 in 2021, the Legislature intended to " 'eliminate[ ] the requirement that parties themselves must personally sign or *orally stipulate* to these settlements and instead allows counsel for the parties to so stipulate on their behalf . . . .' " (*Greisman v. FCA US, LLC* (2024) 103 Cal.App.5th 1310, 1325, quoting Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Assem. Bill No. 2723 (2019–2020 Reg. Sess.) as amended Aug. 20, 2020, p. 5 and Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2723 (2019–2020 Reg. Sess.) as amended May 4, 2020, pp. 5–6.)  Tsao's assertion that the statute requires a trial court to confirm a party's personal understanding of settlement terms is inconsistent with the Legislature's intent to streamline settlement by *removing* the direct client involvement requirement under section 664.6. (*Greisman*, at p. 1325.)

Cal.App.4th at pp. 1534–1535.) The *Kohn* court found this was substantial evidence supporting the trial court ruling that the parties had entered into a valid and binding settlement. (*Id*. at p. 1533.)

Similarly, here, regardless of whether the trial court rigidly adhered to the considerations identified in *Assemi*, substantial evidence supports the trial court's finding of a valid, binding settlement agreement. The record reflects the parties reached a settlement after a two-hour recess. Tsao's counsel confirmed, on the record and in Tsao's presence, that the parties reached a "full settlement" of all claims. Tsao's counsel recited the material terms on the record, including the settlement sum, the deadline for payment, the execution of "a mutual general release," and the parties' agreement to waive confidentiality. The court ensured Cong had access to an accurate translation through her son. In response to the court's inquiries, both Cong and Tsao confirmed their agreement to the settlement terms in open court. Neither party asked for clarification about the terms or objected to any terms as inaccurate.

Moreover, the record establishes that Tsao's refusal to execute a written settlement agreement was based on his discovery of the second page of the corporate minutes bearing Cong's purported signature, and not because he misunderstood the terms of the settlement agreement or believed no binding agreement had been reached. Cong's counsel was advised that Tsao did not execute the written agreement because of the "discovery of new evidence." And Tsao initially moved to rescind the agreement based solely on his discovery of the corporate minutes. He did not challenge the validity of the oral stipulation until after the trial court denied his motion to rescind. (See

16

*Assemi, supra*, 7 Cal.4th at p. 912 [affirming entry of judgment where evidence showed party's refusal to execute written settlement after oral stipulation was not based on disagreement with terms but "rested upon her belated misgivings about having entered into the stipulation"].)

### E. Tsao waived his remaining arguments raised for the first time in his reply

In his reply brief, Tsao asserts several arguments that were not raised or even mentioned in his opening brief. He contends rescission was warranted because he made a mistake of fact; the settlement is not enforceable because it is unconscionable; and rescission was warranted because of the parties' mutual mistake. We decline to address these arguments. " 'Points raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to counter the argument.' [Citation.]" (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.) Thus, "[c]ourts will ordinarily treat the appellant's failure to raise an issue in his or her opening brief as a waiver of that challenge." (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 685.) We deem these arguments waived.

## DISPOSITION

The judgment is affirmed.  Respondent to recover her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ADAMS, J.


We concur:


EDMON, P. J.


EGERTON, J.

18